**Roger Dale SHERRON, Appellant,**

v.

**Larry NORRIS, Interim Director, Arkansas Department of Correction, Appellee.**

No. 95–1265.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 11, 1995.

Decided Nov. 14, 1995.

James H. Phillips, Little Rock, Arkansas, argued, for appellant.

Olan Warren Reeves, Assistant Attorney General, Little Rock, Arkansas, argued, for appellee.

Before WOLLMAN, LOKEN, and MORRIS SHEPPARD ARNOLD, Circuit Judges.

WOLLMAN, Circuit Judge.

Roger Dale Sherron appeals the district court's[1] denial of his petition for a writ of habeas corpus. Sherron raises claims of ineffective assistance of trial counsel, ineffective assistance of appellate counsel, and viola-

**1.** The Honorable Stephen M. Reasoner, United States District Judge for the Eastern District of Arkansas.

tion of his due process and confrontation clause rights in his convictions of first degree murder and first degree battery. We affirm.

## I. Factual and Procedural Background

On the night of July 10, 1983, Sherron, armed with a handgun, went to see his estranged wife, Carolyn, who was staying with Holly Gregory Ashley and Holly's then-boyfriend, David Ashley. Holly testified that Sherron and Carolyn went into the bedroom to talk privately; fifteen minutes later she heard Carolyn "scream a little bit," followed immediately by the sound of a gunshot. Sherron then emerged from the bedroom with the gun, told Holly that she had "messed up everything," and ordered her to take off her clothes. Holly grabbed the gun; they struggled and the gun discharged, the bullet missing them both. Holly testified that Sherron then struck her repeatedly with the gun and that he pointed the gun at her and pulled the trigger several times, the gun not firing. After being severely beaten, Holly eventually escaped and ran to a neighbor's house for help.

Sherron's version of the facts was somewhat different. He testified that he brought the gun to Holly's house only to protect himself from David Ashley, a man with a history of violence, and that at no time did he intend to kill his wife. According to Sherron, he and Carolyn were in the bedroom seriously discussing a reconciliation when Holly interrupted them and demanded that Sherron leave. Sherron stated that he became angry with Holly because he and Carolyn were in the middle of an intimate conversation and Holly's interruption put an end to his attempts at reconciliation. He pulled the gun intending to force Holly to leave the house. Carolyn grabbed his arm to stop him. During the ensuing struggle the gun went off, the bullet hitting and killing Carolyn.

Sherron did not deny beating Holly. He stated that he remembered hitting her only once and that he was simply attempting to leave to get help because there was no telephone in the house. After Holly left, Sherron returned to his apartment and called his brother, Eddie, telling Eddie that he was going to commit suicide. Eddie talked him out of doing so, whereupon Sherron then called the police.

Dr. Fahmy Malak, the medical examiner who examined Carolyn's body shortly after the shooting, indicated in his autopsy report that he found gunpowder residue and a cylindrical deposit of trace metal on Carolyn's left hand. Sherron's counsel stipulated to the reading of Dr. Malak's report to the jury in lieu of Dr. Malak's in-court testimony. Trial counsel neither looked at Dr. Malak's file nor interviewed him personally. At the habeas evidentiary hearing, Dr. Malak testified that his findings regarding gunpowder residue and trace metal deposits were consistent with Sherron's testimony that Carolyn's hand was on or near the gun when it was fired.

The State called two police officers, Tony Bradley and Irvin Shelton, as witnesses to describe Carolyn Sherron's body. Officer Bradley told the jury that the "left side of her face had been beaten and bruised." Defense counsel objected on the ground that this was a conclusion, but failed to obtain a ruling on the objection. On cross-examination, counsel elicited testimony from Bradley to clarify that the "bruises" were limited to the area immediately surrounding the bullet wound. Officer Shelton then testified that when he saw Carolyn's body "she had large bruises" and that "she had some bruises along the facial area, and I believe there were one or two to the right side of her head." On cross-examination, defense counsel unsuccessfully attempted to elicit an admission from Shelton that the only bruises on Carolyn's body were those immediately surrounding the wound.

After cleaning Carolyn's body, Dr. Malak took pictures that showed that she had no bruises. The jury did not see these pictures.

In an offer of proof after the jury commenced deliberations, Eddie Sherron testified that his brother had called him on the night of the shooting and said that he had just shot Carolyn and that "he didn't mean to." According to Eddie, Sherron went on to explain that he pulled out the gun to scare Holly into leaving but that Carolyn grabbed the gun and it went off. He further testified that his brother threatened to kill himself

because he "didn't have nothing else to live for after his wife was dead." The trial court ruled that Eddie could have testified that he had received a phone call and that his brother sounded upset and was crying, but could not have testified to the substance of the conversation. Because defense counsel had offered only the specific testimony and not the fact of the phone call, Eddie was not allowed to testify.

The jury found Sherron guilty of first degree murder and first degree assault and sentenced him to life imprisonment for the murder and to twenty years for the battery. Sherron retained new counsel to handle his direct appeal. The only argument raised by appellate counsel was that the trial court erred in refusing to instruct the jury on the lesser-included offense of negligent homicide. The Arkansas Supreme Court affirmed the convictions. *Sherron v. State,* 285 Ark. 8, 684 S.W.2d 247 (1985), and denied Sherron's pro se petition for state post-conviction relief. *Sherron v. State,* No. CR 84–138, 1987 WL 10020 (Ark. Apr. 27, 1987).

## II. Procedural Default

█ We find that three of Sherron's four claims have been procedurally defaulted. Sherron failed to raise his ineffective assistance of appellate counsel, due process, and confrontation clause claims in state court. We will not review claims that appear for the first time in a federal habeas petition unless the petitioner can show adequate cause for his failure to raise them in the state proceedings and actual prejudice from the alleged constitutional violations, or if he can demonstrate that failure to review a claim would result in a fundamental miscarriage of justice. *Coleman v. Thompson,* 501 U.S. 722, 750, 111 S.Ct. 2546, 2564–65, 115 L.Ed.2d 640 (1991); *Krimmel v. Hopkins,* 56 F.3d 873, 876 (8th Cir.1995).

Sherron argues that his pro se status, coupled with the refusal of the state court to grant him access to the trial transcript, is sufficient cause to excuse his procedural default. Sherron sought a copy of the transcript at the time he filed his state post-conviction petition to enable him to "further prepare and amend" his petition. The Ar-

kansas Supreme Court denied Sherron's request because he failed to show a specific need for the transcript. *Sherron v. State,* No. CR 84–138, 1987 WL 10020 (Ark. Apr. 27, 1987).

█ We have held that pro se status standing alone is insufficient to establish cause for a procedural default. *Scroggins v. Lockhart,* 934 F.2d 972, 975 (8th Cir.1991); *Smittie v. Lockhart,* 843 F.2d 295, 298 (8th Cir.1988). Moreover, we have held that the unavailability of a trial transcript does not constitute sufficient cause if the prisoner failed to show that the issues on appeal were nonfrivolous and that the transcript was required to decide the issues. *Smith v. Lockhart,* 882 F.2d 331, 334 (8th Cir.1989) (citing *United States v. Lewis,* 605 F.2d 379, 380 (8th Cir.1979)), *cert. denied,* 493 U.S. 1028, 110 S.Ct. 739, 107 L.Ed.2d 757 (1990). Because Sherron failed to make this required showing, the Arkansas Supreme Court permissibly denied his transcript request. Thus, Sherron has not established cause to excuse his procedural default.

█ Sherron's failure to show cause makes a determination of prejudice unnecessary. Hence, we turn to the narrow actual innocence exception to the cause and prejudice requirement. To fall within the actual innocence exception, a petitioner must establish "that it is more likely than not that, but for the constitutional error claimed, 'no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" *Fairchild v. Norris,* 51 F.3d 129, 130 (8th Cir.) (quoting *Schlup v. Delo,* —— U.S. ——, ——, 115 S.Ct. 851, 868, 130 L.Ed.2d 808 (1995)), *cert. denied,* —— U.S. ——, 115 S.Ct. 2562, 132 L.Ed.2d 815 (1995). *See also Battle v. Delo,* 64 F.3d 347, 352 (8th Cir.1995); *Whitmore v. Avery,* 63 F.3d 688, 689–90 (8th Cir.1995). Having reviewed each of Sherron's three defaulted claims, we find that the new evidence offered is equivocal, at best. None of Sherron's claims, even if proved, would establish that it is more likely than not that, but for the constitutional error, no reasonable juror would have found him guilty of first degree murder. Thus, the actual innocence exception is inapplicable, and so we

turn to the merits of the only remaining claim, ineffective assistance of trial counsel.

### III. Ineffective Assistance of Trial Counsel

In arguing that his trial counsel was ineffective, Sherron points to five errors. First, counsel unreasonably and inexplicably agreed to stipulate to the introduction of Dr. Malak's autopsy report in lieu of his live testimony. Second, counsel failed to interview Dr. Malak personally. Third, trial counsel's cross-examination of Officers Bradley and Shelton was ineffective. Fourth, trial counsel was ineffective for failing to present Eddie Sherron's testimony. Fifth, counsel failed to look at Dr. Malak's file. Finally, Sherron argues that if these five claims are not independently sufficient to warrant a finding of deficient trial counsel performance, cumulatively they establish ineffective assistance.

■■■ To prevail on his ineffective assistance of counsel claims, Sherron must show that counsel's performance was deficient and that he was prejudiced by that deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). Counsel's performance was deficient if it fell "outside the wide range of professionally competent assistance." *Id.* Counsel's performance was prejudicial if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. at 2068.

■■■ Both components of an ineffective assistance of counsel claim are mixed questions of law and fact. *Strickland*, 466 U.S. at 698, 104 S.Ct. at 2070. We review the district court's legal conclusions de novo and its factual findings for clear error. *Wilson v. Armontrout*, 962 F.2d 817, 819 (8th Cir.) (citing *Couch v. Trickey*, 892 F.2d 1338, 1341 (8th Cir.1989)), *cert. denied*, —— U.S. ——, 113 S.Ct. 383, 121 L.Ed.2d 293 (1992).

■■■ Our review of counsel's performance is highly deferential. *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065. We must look beyond the "distorting effects of hindsight" and ask whether, in the circumstances present at trial, counsel acted outside the "wide range of professionally competent assistance." *Id.* at 689–90, 104 S.Ct. at 2066.

■■■ We first address the claim that counsel's failure to interview the medical examiner and his decision to allow a reading of the medical examiner's report in lieu of live testimony amounted to deficient performance. A claim of ineffective assistance cannot be based on decisions that relate to a reasoned choice of trial strategy, even when it later may be shown improvident. *Hayes v. Lockhart*, 766 F.2d 1247, 1251 (8th Cir.), *cert. denied*, 474 U.S. 922, 106 S.Ct. 256, 88 L.Ed.2d 263 (1985). Although, in hindsight, counsel's decision to stipulate to the written report may seem unwise, trial counsel made a reasoned decision. At the evidentiary hearing, counsel testified that Dr. Malak had a reputation of being "anti-defendant," and of "flowering up" his testimony. Thus, the chance that Dr. Malak would testify unfavorably weighed against the advantageous testimony that he might have provided. In addition, this perceived hostility may have prevented counsel from approaching Dr. Malak personally. Given counsel's perception of Dr. Malak, the decisions not to interview Dr. Malak and not to insist on his live testimony did not rise to the level of constitutionally deficient performance.

■■ Sherron's claim that counsel's ineffective cross-examination of the police officers amounts to constitutionally deficient performance is likewise without merit. In cross-examining the officers, counsel attempted to procure concessions that the bruises they saw were limited to the area surrounding the wound. Had the officers admitted this, counsel could have argued in closing that the "bruises" were not really bruises at all, but rather a discoloration from internal bleeding caused by the bullet wound. Although counsel's cross-examination may not have been as successful as he might have hoped, flawless cross-examination is rare. *Strickland* does not require perfect trial performance; it requires only competence.

■■ Sherron next claims that counsel's failure to call Eddie Sherron as a witness constituted ineffective assistance. Because at best only the fact of the telephone call and

the testimony that Sherron was upset would have been admissible, Eddie's testimony would have merely reinforced already-admitted testimony that Sherron was upset after the shooting. Sherron testified about the telephone call, and several police officers confirmed that Sherron was distraught after the shooting. Officer Brooks testified that Sherron repeatedly said, "I didn't mean to kill her," and that Sherron was so upset that Brooks had to stop the police car so that Sherron could throw up. Given this testimony, counsel's decision to forgo what would at best have been cumulative testimony was not professionally unreasonable.

We next address Sherron's claim that counsel was ineffective in failing to look at Dr. Malak's file. The file contained pictures of Carolyn's body, after it was cleaned, showing that she had not been beaten. Counsel could have used these pictures in his cross-examination of the police officers concerning the bruises. Although counsel's performance was deficient in failing to discover these pictures, we find no prejudice. Although the officers testified that Carolyn had been beaten, in light of the other trial evidence it is unlikely that this testimony was prejudicial. Holly would have likely heard some noise coming from the bedroom had Sherron been beating Carolyn; yet she testified that she heard nothing until the scream and gunshot. The medical examiner's report, which was read to the jury, did not mention any bruising. In addition, the jury could have determined from the pictures taken at the crime scene that any "bruising" was limited to the area immediately surrounding the wound. Sherron has thus failed to show that there is a reasonable probability that but for counsel's failure to look at the file, the result of the trial would have been different. *See Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068.

Finally, Sherron argues that, even if these mistakes were not individually sufficient to constitute ineffective assistance, the cumulative effect of the decisions did so. We have found that only one of counsel's actions, his failure to look at Dr. Malak's file, rose to the level of deficient performance. Moreover, we have found that this failure did not prejudice Sherron. Because we have found only one instance of deficient performance, we need not discuss the question whether the cumulative effect of counsel's alleged errors prejudiced Sherron. *See Girtman v. Lockhart*, 942 F.2d 468, 474–75 (8th Cir.1991).

The judgment is affirmed.