# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 97-1637

_____

| | |
|---|---|
| Stephen K. Johns, | * |
| | * |
| Appellant, | * |
| | * Appeal from the United States |
| v. | * District Court for the |
| | * Eastern District of Missouri. |
| Michael Bowersox, Superintendent of | * |
| Potosi Correctional Center, | * |
| | * |
| Appellee. | * |

_____

Submitted:  April 19, 1999

Filed:  February 8, 2000

_____

Before RICHARD S. ARNOLD, WOLLMAN,[1] and BEAM, Circuit Judges.[2]

_____

WOLLMAN, Chief Judge.

_____

[1]Roger L. Wollman became Chief Judge of the United States Court of Appeals for the Eighth Circuit on April 24, 1999.

[2]This case was originally argued before Judge Richard S. Arnold, Judge Wollman, and Judge Kelly on September 22, 1998.  Following Judge Kelly's death on October 21, 1998, the submission was vacated and the case was restored to the calendar for reargument pursuant to Eighth Cir. R. 47E.

Stephen K. Johns was convicted of capital murder and sentenced to death for the 1982 murder of a gas station attendant. He appeals the district court's[3] denial of his 28 U.S.C. § 2254 petition for a writ of habeas corpus. We affirm.

## I.

The evidence adduced at trial established the following sequence of events. In January of 1982 Johns told David Smith that he wanted to rob the Onyx gas station in St. Louis, Missouri. Johns told Smith that he "never left any witnesses." In early February of 1982, Johns told Linda Klund, an acquaintance of some four and one-half years' standing, that he planned to rob the station and asked her to drive the getaway car. She agreed to do so.

On the morning of February 18, 1982, Johns called Klund and told her that "he was going to do it that evening." Later that day, Johns purchased fifteen .32 caliber bullets at a sporting goods store. That evening, Klund picked up Johns and his friend Robert Wishon. Klund noticed that Johns was carrying a small handgun. After reviewing the getaway route with Johns, Klund parked the car up the street from the Onyx station and Johns and Wishon went inside. They stole $248 in cash and shot the attendant, seventeen-year-old Donald Voepel, Jr., in the back of the head three times at point-blank range. When they returned to the vehicle, Johns told Klund that they "didn't get as much money as they thought they were going to get." As they drove away, Johns and Wishon threw the money bag onto the highway. When Klund dropped Johns off, he gave her the gun and told her to keep it for him in case he was caught.

---

[3]The Honorable Edward L. Filippine, United States District Judge for the Eastern District of Missouri.

The police searched Johns's residence that night and discovered handwritten surveillance information about the gas station. Johns did not return home, however, having called Klund and learned that the police were searching for him. He told Klund to dispose of the gun and went to the home of a friend, Albert Keener. Johns told Keener that he and Wishon robbed the station and that "he himself shot the kid in the head three times." The next day, February 19, Keener told the police where Johns was and that he had confessed to the robbery and murder. Johns was arrested that evening. Shortly thereafter, Klund confessed her role in the robbery and turned over the gun, which forensics experts determined was the .32 caliber revolver used to commit the murder. Klund also showed police the escape route and led them to the discarded money bag. Klund pleaded guilty to robbery; Wishon pleaded guilty to second-degree murder. Johns was charged with robbery and capital murder.

The jury found Johns guilty of capital murder and sentenced him to death. On direct appeal, the Missouri Supreme Court affirmed his conviction and sentence. See State v. Johns, 679 S.W.2d 253 (Mo. 1984) (en banc), cert. denied, 470 U.S. 1034 (1985). His petition for state postconviction relief was denied by the trial court and on appeal. See 741 S.W.2d 771 (Mo. Ct. App. 1987), cert. denied, 486 U.S. 1046 (1988). Johns then filed this petition for a writ of habeas corpus in federal district court in June of 1988. In December of 1993, he filed a motion in the Missouri Supreme Court to recall the mandate. The motion was summarily denied. The district court denied Johns's petition in July of 1996, and this appeal followed.

## II.

We issued a certificate of appealability on four issues: (1) whether the jury instruction on deliberation constituted reversible error, (2) whether the government deprived Johns of due process by suppressing material evidence, (3) whether Johns received ineffective assistance of counsel at the penalty phase, and (4) whether an execution more than fifteen years after conviction constitutes cruel and unusual

punishment. Because Johns filed his petition for habeas corpus well before the effective date of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214, we apply the pre-AEDPA standard of review to his claims. See Pruett v. Norris, 153 F.3d 579, 584 n.6 (8th Cir. 1998).

## A.

The State submitted the case to the jury on the basis of accomplice liability. Jury instruction number five at trial provided:

> If you find and believe from the evidence beyond a reasonable doubt: first, that on or about February 18, 1982, in the City of St. Louis, State of Missouri, the defendant or Robert Wishon caused the death of Donald Voepel, Jr., by shooting him; and second, that the defendant or Robert Wishon intended to take the life of Donald Voepel, Jr.; and third, that the defendant or Robert Wishon knew that he was practically certain to cause the death of Donald Voepel, Jr.; and fourth, that the defendant or Robert Wishon considered taking the life of Donald Voepel, Jr., and reflected upon this matter coolly and fully before doing so, then you are instructed that the offense of capital murder has occurred, and if you further find and believe from the evidence beyond a reasonable doubt: fifth, that with the purpose of promoting or furthering the commission of capital murder, the defendant acted together with or aided or encouraged Robert Wishon in committing that offense, then you will find the defendant guilty of capital murder.

Jury Instr. No. 5, Appellant's Br. at Add. 102. Johns claims that the instruction violated the Eighth, Sixth, and Fourteenth Amendments because it did not require the jury to find that he personally deliberated on the murder.

Under the Eighth Amendment, states may impose the death penalty only on defendants who "kill, attempt to kill, or intend that a killing take place." Enmund v.

Florida, 458 U.S. 782, 797 (1982). The Supreme Court has held that under Enmund a federal habeas court "must examine the entire course of the state-court proceedings against the defendant in order to determine whether, at some point in the process, the requisite factual finding as to the defendant's culpability has been made." Cabana v. Bullock, 474 U.S. 376, 387 (1986) (footnote omitted).

Here, the jury found that even if Johns did not pull the trigger, he "acted together with or aided or encouraged" Wishon "with the purpose of promoting or furthering the commission of capital murder." Jury Instr. No. 5, Appellant's Br. at Add. 102. At a minimum, this showed that Johns intended that a killing would take place. See Fairchild v. Norris, 21 F.3d 799, 803-04 (8th Cir. 1994) (finding that Enmund was satisfied because the defendant was a major participant in the underlying felony, was aware that the co-defendant was carrying a gun, and made no attempt to assist the victim after she was shot). Accordingly, the instruction did not violate the Eighth Amendment.

The Sixth Amendment requires that criminal convictions "rest upon a jury determination that the defendant is guilty of every element of the crime with which he is charged, beyond a reasonable doubt." United States v. Gaudin, 515 U.S. 506, 510 (1995) (citing Sullivan v. Louisiana, 508 U.S. 275, 277-78 (1993)). Johns argues that the instruction violated the Sixth Amendment because it did not explicitly require the jury to find that he deliberated on capital murder. The State argues that by requiring the jury to find that Johns assisted Wishon in the killing "with the purpose of promoting or furthering the commission of capital murder" the instruction effectively required the jury to find that Johns deliberated on the killing.

Deliberation was an element of capital murder under Missouri law when Johns was tried and convicted. See Mo. Rev. Stat. § 565.001 (1978). The Missouri case law and model jury instructions, however, did not require an explicit instruction on deliberation at that time. See State v. White, 622 S.W.2d 939, 945-46 (Mo. 1981) (en

-5-

banc) (holding that finding that the defendant provided assistance "with the purpose of" promoting capital murder was the same as finding that the defendant had the requisite mental state for capital murder); MAI-CR2d 2.12, Note 7 on Use (1983) (suggesting, but not requiring, explicit deliberation language).

The Missouri Supreme Court found on direct appeal that instruction number five effectively required the jury to find deliberation. See Johns, 679 S.W.2d at 259-60. We agree, and accordingly we hold that the instruction did not violate the Sixth Amendment. See Roberts v. Bowersox, 137 F.3d 1062, 1068 (8th Cir. 1998), cert. denied, 119 S. Ct. 808 (1999) (upholding a first-degree murder instruction based on accomplice liability because it was consistent with existing model jury instructions); Thompson v. Missouri Bd. of Probation & Parole, 39 F.3d 186, 190 (8th Cir. 1994) (upholding a first-degree murder instruction based on accomplice liability because it required the jury to find that the defendant "knowingly or purposefully" aided in the killing).

Even if held to be constitutionally deficient, the instruction does not lead to automatic reversal of the conviction, for it is subject to harmless-error analysis. See Neder v. United States, 119 S. Ct. 1827, 1833-34 (1999) (holding that the omission of an element from a jury instruction is not structural error and thus is subject to harmless-error analysis); California v. Roy, 117 S. Ct. 337, 338-39 (1996) (per curiam) (applying harmless-error analysis to an erroneous state first-degree murder instruction). Because the state court did not apply harmless-error analysis, we apply the stricter harmless-error standard of Chapman v. California, 386 U.S. 18 (1967). See Orndorff v. Lockhart, 998 F.2d 1426, 1430 (8th Cir. 1993). Under Chapman, "before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." 386 U.S. at 24.

The jury heard abundant evidence that Johns deliberated on the murder. While planning the robbery, he told Smith that he "never left any witnesses." He purchased

ammunition for the gun the day of the murder and had possession of the gun immediately before the killing. He was present when the murder occurred and gave the gun to Klund for safekeeping immediately thereafter. He told his friend Keener that he himself had shot young Voepol in the head three times. We conclude that such overwhelming evidence rendered any instructional error harmless beyond a reasonable doubt.

There remains the issue presented by the fact that while Johns's habeas petition was pending in the district court the Missouri Supreme Court held that although a homicidal act may be imputed to an accomplice, the mental state of deliberation may not be. See State v. O'Brien, 857 S.W.2d 212, 218 (Mo. 1993) (en banc) (citing State v. Ervin, 835 S.W.2d 905, 923 (Mo. 1992) (en banc)). The court stated that its decision in Ervin had overruled cases, including Johns itself, that had employed jury instructions similar to that used in Johns's case. Id. at 218 (citing White, 622 S.W.2d 939; Johns, 679 S.W.2d 253; and State v. Hunter, 782 S.W.2d 95 (Mo. Ct. App. 1989)).

The Due Process Clause of the Fourteenth Amendment requires states to apply their laws "in a manner that avoids the arbitrary and capricious infliction of the death penalty." Godfrey v. Georgia, 446 U.S. 420, 428 (1980). Johns argues that the Missouri Supreme Court's denial of his motion to recall the mandate after declaring in O'Brien that Johns had been overruled by Ervin was so arbitrary and capricious as to shock the judicial conscience and violate substantive due process. The State argues that Johns is not entitled to retroactive application of the new case law, and that he is not entitled to relief under the new standards in any event.

The Constitution does not require states to give retroactive effect to state court decisions announcing new rules of law. See Wainwright v. Stone, 414 U.S. 21, 23-24 (1973); Fiore v. White, 149 F.3d 221, 224 (3d Cir. 1998), cert. granted, 119 S. Ct. 1332 (1999), question certified, 120 S. Ct. 469 (1999); Houston v. Dutton, 50 F.3d

381, 384-85 (6th Cir. 1995); Robinson v. Ponte, 933 F.2d 101, 103-04 (1st Cir. 1991); La Rue v. McCarthy, 833 F.2d 140, 142-43 (9th Cir. 1987). On the other hand, states must give retroactive effect to decisions that are not "new law" but rather are dictated by precedent. See Yates v. Aiken, 484 U.S. 211, 216-17 (1988).

We need not decide whether the subsequent decisions of the Missouri Supreme Court announced a new rule of law or whether they reflected a result dictated by precedent, because Johns is not entitled to relief under the standards enunciated in Ervin and O'Brien.

As discussed above, there was overwhelming evidence that Johns planned to use deadly force by means of the weapon for which he had purchased ammunition earlier in the day. His admission to Keener that he had shot Voepel in the head three times established beyond even the most metaphysical doubt the fact that Johns had deliberated before killing the young man. Accordingly, the Missouri Supreme Court's refusal to apply in his case the rules announced in Ervin and O'Brien, however desirable it would have been for the court to have explicated the reasons for that refusal, did not violate Johns's rights to substantive due process, for even under the instructions required by Ervin and O'Brien there is no doubt that the jury would have reached the same conclusion regarding Johns's guilt. See, e.g., Jones v. United States, 119 S. Ct. 2090, 2109-10 (1999).

**B.**

Johns also argues that the State deprived him of due process under Brady v. Maryland, 373 U.S. 83 (1963), by failing to disclose before trial that Albert Keener received a monetary reward from the gas station owner for testifying against Johns. To establish a Brady violation, a defendant must show that "(1) the prosecution suppressed evidence, (2) the evidence was favorable to the accused, and (3) the evidence was material." Cornell v. Nix, 921 F.2d 769, 770 (8th Cir. 1990). It is undisputed that

evidence of the reward would have been impeachment evidence favorable to Johns at trial, satisfying the second element of Brady. The State claims, however, that it did not suppress the evidence and that even if it did, the evidence was not material.

There is no suppression of evidence if the defendant could have learned of the information through "reasonable diligence." United States v. Jones, 160 F.3d 473, 479 (8th Cir. 1998) (citing Westley v. Johnson, 83 F.3d 714, 726 (5th Cir. 1996)). Nor can there be suppression when the defendant and the State have equal access to the information. See United States v. Jones, 34 F.3d 596, 600 (8th Cir. 1994). The State argues that it did not suppress information about the reward because Johns could have discovered it in a St. Louis area newspaper.

That the reward was published in an unidentified St. Louis newspaper does not mean that Johns had equal access to the information. The State learned of the reward, and of Keener's interest in it, from Keener himself. Even if Johns had managed to learn from a newspaper that the reward existed, he had no way of learning that Keener had repeatedly inquired about the reward. Thus, the State's nondisclosure of the evidence regarding the reward satisfied the first element of Brady.

The State argues that the third Brady element was not met because evidence of the reward, and Keener's interest therein, was not material. "[E]vidence is material 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" Strickler v. Greene, 119 S. Ct. 1936, 1948 (1999) (quoting United States v. Bagley, 473 U.S. 667, 682 (1985)). We have repeatedly held that "materiality is not established by the mere possibility that the withheld evidence may have influenced the jury." Jones, 160 F.3d at 479.

Keener implicated Johns in the murder when he contacted Sergeant Timothy Cunningham on February 19. The record shows that he did not inquire about the reward at that time and that Sergeant Cunningham had no knowledge of any reward.

Keener first inquired about the reward during an interview with police on February 20. In addition, Keener's credibility was impeached at trial when defense counsel elicited testimony on cross-examination that he had recently engaged in illegal drug use, had been convicted of grand larceny, and had agreed to testify against Johns in exchange for a reduced sentence in a pending armed robbery charge. Thus, the suppressed evidence had limited impeachment value. In light of the abundant evidence showing Johns's involvement in the murder, we conclude that the result of the proceeding would not have been different had the State disclosed the evidence. See Strickler, 119 S. Ct. at 1952-54 (holding that although a Brady inquiry is not based on the sufficiency of the evidence, other evidence implicating the defendant is relevant to materiality); Jones, 160 F.3d at 479 (same). Thus, Johns has not shown a Brady violation.

## C.

Johns contends that his penalty-phase counsel was ineffective for failing to introduce mitigating evidence at the penalty phase of his trial. Ineffective assistance of counsel claims are governed by the standards of Strickland v. Washington, 466 U.S. 668 (1984). See Sherron v. Norris, 69 F.3d 285, 290 (8th Cir. 1995). To show ineffective assistance under Strickland, Johns must demonstrate that "counsel's performance was deficient and that he was prejudiced by that deficient performance." Id. (citing Strickland, 466 U.S. at 687).

In determining whether counsel's performance was deficient we "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. Strategic decisions made after diligent investigation are "virtually unchallengeable." Id. at 690. Furthermore, "the reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." Id. at 691.

Counsel interviewed Johns's mother and father and planned to call them as character witnesses during the penalty phase. Counsel was also prepared to call legal experts to testify that the death penalty is not an effective deterrent to crime. Johns instructed counsel not to present any mitigation evidence, however. He was, in counsel's words, particularly "vehement in his insistence" that his mother not be called to testify.

Counsel did not blindly follow Johns's wishes in deciding not to present mitigation evidence. Rather, he conducted extensive interviews with Johns about penalty-phase strategy, investigated potential witnesses to determine how favorable their testimony would be, and concluded that presenting mitigation evidence would be more detrimental than helpful. This decision was reasonable under Strickland. See Hayes v. Lockhart, 852 F.2d 339, 351-52 (8th Cir. 1988), vacated on other grounds, 491 U.S. 902 (1989) (finding it a "reasonable trial tactic" for counsel not to present mitigation evidence after thoroughly investigating the possible evidence and considering defendant's wishes not to have family members called as witnesses). Although in hindsight it may appear that Johns had little to lose by presenting mitigation evidence, we consider ineffective assistance of counsel claims based on what counsel knew at trial. See Strickland, 466 U.S. at 689. Accordingly, Johns is not entitled to relief on this basis.

## D.

Johns contends that executing him more than fifteen years after his conviction would constitute a violation of the Eighth Amendment's proscription of cruel and unusual punishments, citing Justice Stevens's memorandum respecting the denial of certiorari in Lackey v. Texas, 514 U.S. 1045 (1995), which stated that this argument presents an important and undecided issue. He also cites a decision of the British Privy Council that found a similar argument persuasive. See Pratt v. Attorney Gen. of Jamaica, [1994] 2 App. Cas. 1, 4 All E.R. 769 (P.C. 1993) (en banc).

-11-

Because Johns did not raise this argument in the state courts or in the district court, it is procedurally barred and constitutes an abuse of the writ. See Chambers v. Bowersox, 157 F.3d 560, 568-69 (8th Cir. 1998), cert. denied, 119 S. Ct. 2383 (1999) (finding that a Lackey claim was procedurally barred because it was not raised in state court); Kennedy v. Delo, 959 F.2d 112, 117 (8th Cir. 1992) (finding it an abuse of the writ to raise an issue on appeal that was not raised in the original habeas petition). Johns has not shown cause and prejudice for failing to raise this argument or that our refusal to consider it will result in a miscarriage of justice. See McCleskey v. Zant, 499 U.S. 467, 493-95 (1991).

Even if we were to consider the merits of the claim, our recent decision in Chambers would foreclose the possibility of granting Johns relief. In that case, the defendant had spent fifteen years on death row by the time of his most recent appeal and had succeeded in having his conviction overturned twice. See 157 F.3d at 568-70. We acknowledged that "delay in capital cases is too long," but held that the delay "is a function of the desire of our courts, state and federal, to get it right, to explore exhaustively, or at least sufficiently, any argument that might save someone's life." Id. at 570. Absent evidence that the delay was caused intentionally to prolong the defendant's time on death row, we held that it did not "even begin[] to approach a constitutional violation." Id.

Johns does not claim that the delay in this case was caused intentionally by the State. Indeed, he acknowledges that the State repeatedly requested that the district court proceed with more dispatch in its adjudication of the case. Furthermore, Johns cannot dispute that some of the delay was due to his motion to recall the mandate in the Missouri Supreme Court and his amendment of his federal habeas petition to reflect the denial of the motion. Although Johns was entitled to make the motion and amend his federal petition, he cannot now claim that the delay caused by his actions constitutes cruel and unusual punishment. See Chambers, 157 F.3d at 570.

## III.

Johns raises an additional claim that was not included in the certificate of appealability. He argues that issuance of a certificate of appealability rather than a certificate of probable cause was incorrect in light of the Supreme Court's decision in Lindh v. Murphy, 521 U.S. 320 (1997). This argument is foreclosed by our decision in Tiedeman v. Benson, 122 F.3d 518, 521 (8th Cir. 1997) (distinguishing Lindh and holding that when a notice of appeal from the denial of a habeas petition is filed on or after April 24, 1996, the effective date of the Antiterrorism & Effective Death Penalty Act (AEDPA), the certificate of appealability provisions of AEDPA apply even if the habeas petition was filed prior to the effective date of the act). See Chambers, 157 F.3d at 570 (finding this argument foreclosed by Tiedeman).

The judgment dismissing the petition is affirmed.

RICHARD S. ARNOLD, Circuit Judge, dissenting.

State v. Johns, 679 S.W.2d 253 (Mo. 1984) (en banc), cert. denied, 470 U.S. 1034 (1985), the case in which petitioner's conviction and death sentence were affirmed, has been overruled by name. See State v. O'Brien, 857 S.W.2d 212, 218 (Mo. 1993) (en banc); State v. Ervin, 835 S.W.2d 905, 923 (Mo. 1992) (en banc). This fact has been brought directly to the attention of the Supreme Court of Missouri. Yet, that Court has denied Johns any relief, and has given no reason for its action. To send Johns to his death in these circumstances, when other defendants, similarly situated in all respects save for the timing of the Missouri Supreme Court's review of their cases, would be allowed to live, seems to me arbitrary and unjust. I therefore respectfully dissent.[4]

---

[4]I have no quarrel with the other points covered by the Court's opinion.

One of petitioner's major points on appeal was that the trial court had failed to instruct the jury that, in order to find him guilty of capital murder, it would have to find that Johns himself deliberated on the crime. The case was submitted to the jury on the theory that the actual shooting was done by an associate, Wishon, and that Johns was guilty as an accomplice. Instruction No. 5, which the Court quotes, ante at 4, required the jury to find that the defendant, "with the purpose of promoting or furthering the commission of capital murder, . . . aided or encouraged Robert Wishon in committing that offense . . .." The instruction did not require that the defendant himself have deliberated or reflected upon the matter coolly and fully, even though deliberation is an element, under Missouri law, of both capital murder and murder in the first degree. Notwithstanding this omission, the Supreme Court of Missouri said the element of deliberation was sufficiently submitted to the jury. In so holding the Court relied entirely on State v. White, 622 S.W.2d 939, 945 (Mo. 1981) (en banc), cert. denied, 456 U.S. 963 (1982).[5] According to the White opinion, anyone who purposely aids in the commission of a capital murder necessarily has the same intention, absent special circumstances, as the active participant.

So far, so good. I would have no trouble accepting such an interpretation of state law as consistent with the federal Constitution. Indeed, I believe our Court has accepted it, as against a contention that the Sixth Amendment is violated by failure to instruct on an essential element of the offense. See Thompson v. Missouri Bd. of Probation & Parole, 39 F.3d 186, 190 (8th Cir. 1994). But there is another wrinkle in the present case. The view of state law on which the Johns opinion was based has been disavowed by the final word on state law, the Supreme Court of Missouri. In State v. O'Brien, supra, decided nine years after Johns's case, that Court squarely stated that " 'a first-degree murder instruction premised on accessory liability must ascribe deliberation to the defendant.' " 857 S.W.2d at 217, quoting Ervin, supra, 835 S.W.2d at 923

_____

[5]Like Johns, White has now been disapproved by name by the Supreme Court of Missouri. O'Brien, supra, 857 S.W.2d at 218.

-14-

(emphasis in O'Brien; citations omitted).  The Court added, in order to make the point inescapably clear:

> Proof that the defendant merely aided another with the purpose of facilitating an intentional killing cannot be sufficient to prove first degree murder and, therefore, Ervin clearly overruled Johns . . .. Additionally, to the extent that White has been read to require less than proof of the defendant's own premeditation in every case, it too was overruled.

O'Brien, supra, at 218.

The question is whether this new decision helps Johns.  This question contains two parts:  (1) is Johns entitled to have O'Brien's holding applied to his case; and (2) does the O'Brien holding do Johns any good?  The Court avoids the first part by answering the second in the negative.  It maintains it need not decide whether O'Brien announced a new rule of law, or was dictated by precedent.  According to the Court, Johns would not be entitled to any relief even under the standards announced in Ervin and O'Brien.

I start with the question our Court avoids:  whether O'Brien announced a new rule of law, or was dictated by precedent.  I recognize that the federal Constitution does not prevent state courts from making decisions that announce "new law" prospective, but for two reasons I cannot agree that this general proposition solves the present case.

First, the Missouri Supreme Court's opinion in O'Brien is not phrased in terms of "new law."  As previously discussed, Johns relied entirely on White.  The O'Brien Court says that Johns misconstrued White:  "The key to White, *and that which Johns and Hunter overlooked*, is that the Court, in White, went on to state that the instruction was proper only insofar as it meant 'acting with the conscious object of causing

-15-

premeditated murder, defendant aided in causing capital murder.' " O'Brien, 857 S.W.2d at 217 [emphasis added]. Thus, it appears that the O'Brien Court believed that Johns was wrong when decided. Certainly nothing in the O'Brien opinion indicates that the Court was announcing a new rule to be applied prospectively only. O'Brien himself, the litigant before the Court, got the benefit of the ruling.

Second, the Missouri Supreme Court has not even now indicated that O'Brien was "new law." When it denied Johns's motion to recall the mandate, the Court gave no reason. If the Court had explained that it regarded O'Brien as "new law," and that it was, therefore, not applying it to Johns's case, we would have a different situation. Given that the text of O'Brien suggests that it is not "new law," I would require a statement of reasonable clarity from the Missouri Supreme Court to convince me otherwise. Compare Fiore v. White, __U.S. __, 120 S. Ct. 469 (1999) (to determine whether Pennsylvania prisoner should receive benefit of recent Pennsylvania decision, United States Supreme Court certified to Pennsylvania Supreme Court question of whether recent decision explained or changed Pennsylvania law). No such certification procedure is available in Missouri.

I therefore proceed on the assumption that O'Brien is not "new law," and that Johns gets the benefit of its holding. According to the Court, Johns is still not entitled to relief under O'Brien. This is because, given the evidence in his case, even if Johns had received the proper jury instructions, there is no doubt the jury would have reached the same conclusion regarding Johns's guilt.

The Court's holding assumes that had the Missouri Supreme Court correctly decided Johns, it would have applied some type of harmless-error analysis to the trial court's error. I am not so certain that this is true. The State has not argued that position before this Court. Nor do I find an unequivocal statement in Missouri law indicating that harmless-error analysis would be applied to erroneous jury instructions which omit or drastically misdescribe an element of the offense. Given that the right of an accused

-16-

to a trial by jury, not by appellate judges, is one of the most fundamental common law and constitutional rights, it may well be that Missouri would not allow its appellate judges to speculate on what a jury "might have found" regarding an element of the crime. See <u>Neder v. United States</u>, 119 S. Ct. 1827, 1843 (1999) (Scalia, J. concurring in part and dissenting in part).

To summarize: <u>O'Brien</u> appears on its face to indicate that Johns's case was wrongly decided under the law that should have been applied at the time. In denying Johns's motion to recall the mandate, the Missouri Supreme Court offered nothing to support an alternative view, nor did it say that the error, though fundamental, was harmless. So there is uncertainty as to Missouri law. I recognize that courts often summarily deny post-judgment motions. We do this ourselves every day. But this is a death case, and death is different. The Eighth Amendment, made applicable to the states through the Due Process Clause of the Fourteenth Amendment, requires a higher degree of reasoned certainty in capital cases than in ordinary criminal proceedings. In these unusual circumstances, I believe that putting Johns to death falls short of federal constitutional requirements. I respectfully dissent.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.