116 F.Supp.2d 1113 (2000)
George HUNTER, Petitioner,
v.
Michael KEMNA, et al., Respondent.
No. 4:97 CV 1004 DDN.
United States District Court, E.D. Missouri, Eastern Division.
August 16, 2000.
*1114 *1115 George W. Hunter, Cameron, MO, pro se.
Stacy A. Anderson, Karen Pope Butler, Attorney General of Missouri, Assistant Attorney General, Jefferson City, MO, for Michael Bowersox, respondent.

MEMORANDUM
NOCE, United States Magistrate Judge.
This matter is before the court upon the petition of George Hunter for a writ of habeas corpus under 28 U.S.C. § 2254. The parties have consented to the exercise of jurisdiction by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).
On September 15, 1994, petitioner was convicted by a jury in the Circuit Court of the City of St. Louis, Missouri, of two counts of sodomy (Counts I and II), two counts of endangering the welfare of a child (Counts III and VII) and three counts of misdemeanor assault (Counts IV, V and VI). He was sentenced to a term of life imprisonment, a term of twenty years to be served consecutive to the life term, and two terms of five years and three terms of one year, concurrent to each other, but consecutive to the life term and the term of twenty years. Petitioner is to serve a total of life plus twenty-five years. Petitioner moved for post-conviction relief under Missouri Supreme Court Rule 29.15. This was denied after an evidentiary hearing. See PCR Legal File, at 52. The Missouri Court of Appeals reversed petitioner's conviction as to one count of endangering the welfare of a child, Count VII, but affirmed the remaining convictions, sentences and denial of post-conviction relief. State v. Hunter, 939 S.W.2d 542 (Mo.Ct.App.1997).
Hunter's petition for a writ of habeas corpus alleges the following grounds:
1. There was insufficient evidence as to Count III, so that the conviction is in violation of the Fifth, Sixth and Fourteenth Amendments to the United States Constitution.
2. The testimony of L.B. was so inconsistent with the evidence as to Count II that the trial court wrongfully denied petitioner's request for corroboration and as a result, petitioner's conviction is in violation of the Fifth, Sixth and Fourteenth Amendments.
3. Petitioner was denied effective assistance of trial counsel when that counsel did not call him to testify and did not interview or call material witnesses.
4. Petitioner was denied effective assistance of counsel on direct appeal when that counsel failed to challenge the assault convictions and failed to raise the corroboration rule with respect to all counts.
The evidence offered at trial is described thus in the Missouri Court of Appeals opinion:
In December of 1993, thirteen-year-old L.B. was living with her mother, J.B., her six-year-old sister, M.B., her one-year-old brother, G.H., and appellant, who was her mother's boyfriend and G.H.'s father. Appellant had lived with the family for almost three years. L.B. and appellant got along in the first year, but the relationship deteriorated when appellant began drinking.
On December 17, 1993, L.B. went to bed at 10:00 p.m. L.B. shared a bedroom *1116 with her sister, M.B., who was already asleep, as were her mother and her brother. Sometime after midnight, on December 18, 1993, appellant entered L.B.'s bedroom. Standing beside her bed, appellant woke L.B. by calling her name. Appellant told her to go to the kitchen where he berated her and claimed that she did not respect him. He then told L.B. to go to the basement and sit on the bed. L.B. followed these instructions.
In the basement, appellant struck L.B. in the face with his open hand. Appellant later told her to kneel on the floor in front of him and repeated that she did not respect him. He then told her to unzip his pants and pull out his penis. L.B. pulled appellant's penis out of his jeans, at which appellant told her to put it in her mouth and move up and down. L.B. did so for about two to three minutes. Appellant told L.B. to stop when her mother came to the top of the basement stairs and asked what was going on.
On Christmas eve, December 24, 1993, L.B. went to bed around 11:00 p.m. after helping her mother prepare Christmas dinner. J.B. went to bed about an hour later and appellant was not home at that time. Appellant, who was drunk, awakened L.B. and M.B. in the early morning hours of December 25, 1993. He instructed them to get up and go into the kitchen. Appellant picked up a full 40 ounce bottle of St. Ides malt liquor, poured M.B. a small glass and told her to drink it. M.B. did not want to drink the beer but did so at appellant's order. He then sent her to bed. Appellant then poured L.B. several glasses of beer and ordered her to drink them. He told L.B. that making her drink the beer and watching her vomit as a result would be her Christmas present to him. By the time L.B. was finished drinking the beer appellant poured for her, the 40 ounce bottle was empty.
Appellant then ordered L.B. to kneel in front of him. When L.B. complied, appellant told her to unzip his pants, pull his penis out, and put it in her mouth. L.B. did so and then appellant told her to move her mouth up and down on his penis. Appellant told her to stop after two or three minutes, at which point appellant accused her of not respecting him. Appellant then struck her several times.
At this time, L.B.'s mother, J.B., woke up and went into her daughters' room where M.B. told her that appellant had forced her to drink beer. J.B. then went into the kitchen where she, appellant and L.B. began arguing. Appellant slapped L.B. and L.B. then told her mother that he made her "suck his penis." In response, appellant pushed L.B. down and started hitting her with a chair. J.B. then called the police. When they arrived, the police arrested appellant and took him into custody.
The police requested that the rest of the family come to the police station. L.B., at that time, was so impaired that she was not able to dress herself and needed the help of an Officer to do so. She was dizzy and confused. While she was getting ready to go to the police station, L.B. vomited on the kitchen floor. She vomited a second time on the way to the police station.
Hunter, 939 S.W.2d at 543-44.

EXHAUSTION OF STATE REMEDIES
In order for a prisoner to qualify for federal habeas corpus review under 28 U.S.C. § 2254, he must have first fully exhausted all available state remedies for each ground he intends to present. 28 U.S.C. § 2254(b), (c); Coleman v. Thompson, 501 U.S. 722, 731, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); Sloan v. Delo, 54 F.3d 1371, 1381 (8th Cir.1995), cert. denied, 516 U.S. 1056, 116 S.Ct. 728, 133 L.Ed.2d 679 (1996). Respondent claims that petitioner's fourth ground, ineffective assistance of counsel on direct appeal, is not exhausted. Respondent cites to Rose v. Lundy, 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982), which requires courts to dismiss *1117 petitions with both exhausted and unexhausted claims. Id. at 522. Respondent has also cited an Eighth Circuit case which held that when a mixed petition is presented to the court, the petitioner should choose "whether to amend his petition and delete the unexhausted claims ... or to proceed in state court on the unexhausted claims." Dukes v. Lockhart, 769 F.2d 504, 506 (8th Cir.1985).
This court agrees that petitioner's fourth ground is not exhausted. Petitioner acknowledges as much in his petition after he states the supporting facts for ground four when he claims that "[t]he petition to recall the mandate will address this issue." See Petition, filed June 2, 1997 (Doc. No. 4), at 8 (emphasis added). However, under the Anti-Terrorism and Death Penalty Act of 1996, Congress clearly granted courts the authority to deny a writ of habeas corpus on the merits, "notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2) (1996). The court has reviewed the record of the state proceedings provided by respondent and concludes that petitioner's claims are without merit.

STANDARD OF REVIEW ON THE MERITS
This court's review of a state court decision is limited to situations when adjudication of the claim:
(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.
28 U.S.C. § 2254(d). "A state court's decision is contrary to clearly established law `if the controlling case law requires a different outcome either because of factual similarity to the state case or because general federal rules require a particular result in a particular case.'" Tokar v. Bowersox, 198 F.3d 1039, 1045 (8th Cir.1999) (quoting Richardson v. Bowersox, 188 F.3d 973, 977-78 (8th Cir.1999), cert. denied, ___ U.S. ___, 120 S.Ct. 1971, 146 L.Ed.2d 801 (2000)), petition for cert. filed, Jul. 3, 2000. The issue a federal habeas court faces when deciding whether a state court unreasonably applied federal law is "whether the state court's application of clearly established federal law was objectively unreasonable." Williams v. Taylor, 529 U.S. 362, 120 S.Ct. 1495, 1521, 146 L.Ed.2d 389 (2000) (plurality opinion).

GROUND ONE
Petitioner's first claim is that there was insufficient evidence as to Count III, so that the conviction violated his Fifth, Sixth and Fourteenth Amendment rights. In general, the court will grant habeas relief only if the petitioner can show that "no rational trier of fact could have found proof of guilt beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 324, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). In considering petitioner's claim that the evidence was insufficient to support his convictions, the evidence must be viewed "in the light most favorable to the State, together with all reasonable inferences to be drawn therefrom, and ignore contrary evidence and inferences." State v. Guinan, 665 S.W.2d 325, 327 (Mo. banc), cert. denied, 469 U.S. 873, 105 S.Ct. 227, 83 L.Ed.2d 156 (1984); see Jackson, 443 U.S. at 326, 99 S.Ct. 2781 (court must assume that trier of fact resolved any conflicts in favor of the prosecution and must defer to that resolution).
The indictment against petitioner in state court provided, in relevant part:
COUNT III
The Grand Jurors of the City of St. Louis, State of Missouri, charge that the defendant, in violation of Section 568.045, RSMo, committed the class D felony of endangering the welfare of a child ... in that on or about the 25th day of December 1993, in the City of St. Louis, State of Missouri, the defendant *1118 knowingly acted in a manner that created a substantial risk to the body and health of [L.B.], a child less than seventeen years old, by forcing her to drink alcohol.
See Legal File, at 8. The court reviewed the testimony and evidence offered at trial. L.B. testified that petitioner forced her to drink a forty ounce bottle of beer. See Trial Transcript, at 262-65, 310. Officer Patricia Thomas, one of the officers to respond to L.B.'s mother's call, testified that L.B. "smelled of beer breath," and that she had to help L.B. dress herself because she was impaired. Id. at 459-60. Officer Thomas also testified that as the police were leaving the house with the family, L.B. vomited on the kitchen floor and that the vomit looked like it contained beer. Id. at 464.
Petitioner points out his conviction under Count VII, which charged that petitioner endangered the welfare of M.B. by forcing her to drink alcohol, was reversed. That conviction warranted reversal, so held the Missouri Court of Appeals, because "[t]he State presented no evidence that forcing a six-year-old to drink a small glass of malt liquor (about the size of a juice glass) created a substantial risk to the health, physical or emotional, of M.B." Hunter, 939 S.W.2d at 545. However, in the case of L.B., the evidence of record is sufficient to prove that petitioner forced L.B. to consume an amount of beer sufficient to make her ill. Petitioner has failed to show that no reasonable juror could have convicted him of endangering the welfare of a child.
This ground is without merit.

GROUND TWO
Petitioner's second claim for relief is that the testimony of L.B. was so inconsistent with the evidence as to Count II that the trial court wrongfully denied petitioner's request for corroboration and as a result, petitioner's conviction is in violation of the Fifth, Sixth and Fourteenth Amendments. The Missouri Court of Appeals dealt with this issue as follows:
In his third point, appellant alleges that L.B.'s testimony was "so inconsistent with common experience and the admitted facts and evidence" as to demand corroboration. As there was no corroboration, appellant urges, the conviction on Count II, sodomy, cannot stand. Appellant refers to the much maligned corroboration rule. Normally, in sexual abuse cases, the victim's testimony will sustain a conviction even if no corroborating evidence is presented. The exception provides that when the victim's testimony is of a contradictory nature or, when applied to the admitted facts of the case, her testimony is not convincing and leaves the court's mind clouded with doubts, she must be corroborated or a judgment cannot be sustained. Appellant claims that L.B.'s testimony meets this exception and therefore needs corroboration. We disagree and find any arguable inconsistencies insufficient to invoke the exception and require corroboration. Point three is denied.
Hunter, 939 S.W.2d at 545 (citations omitted).
Petitioner's claim is a matter of state law that is not reviewable in this court. See Estelle v. McGuire, 502 U.S. 62, 67-68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991); Bounds v. Delo, 151 F.3d 1116, 1118 (8th Cir.1998). The Missouri Court of Appeals determination that L.B.'s testimony was not sufficient to invoke the exception, which would require that her testimony be corroborated, is a determination of state law that is binding on this court. See Schleeper v. Groose, 36 F.3d 735, 737 (8th Cir.1994); McDonald v. Bowersox, 101 F.3d 588, 592 (8th Cir.1996), cert. denied, 521 U.S. 1127, 117 S.Ct. 2527, 138 L.Ed.2d 1027 (1997).
This ground is without merit.

GROUND THREE
Petitioner's third claim for relief is that he was denied effective assistance of trial counsel when that counsel did not call him *1119 to testify and did not interview or call material witnesses. To prevail on this point, petitioner must demonstrate that the attorney's performance was deficient and that he was prejudiced as a result. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); Ford v. Armontrout, 916 F.2d 457, 460 (8th Cir.1990), cert. denied, 499 U.S. 964, 111 S.Ct. 1594, 113 L.Ed.2d 657 (1991).
The adequacy of counsel's assistance is determined by an inquiry into whether, in light of all the circumstances, the identified acts or omissions were outside the broad range of competent assistance. Strickland, 466 U.S. at 690, 104 S.Ct. 2052. Counsel is given broad discretion in making tactical decisions. Id. at 689, 104 S.Ct. 2052. It is generally presumed that counsel rendered adequate assistance. Beans v. Black, 757 F.2d 933, 936 (8th. Cir.), cert. denied, 474 U.S. 979, 106 S.Ct. 381, 88 L.Ed.2d 334 (1985). Regarding the prejudice prong of the Strickland test, a defendant must show that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687, 104 S.Ct. 2052; see also, Lockhart v. Fretwell, 506 U.S. 364, 369, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993).
The record refutes petitioner's claim that he received ineffective assistance of trial counsel. After petitioner was sentenced, the following took place:
Q. [Trial judge]: At this time I want to ask you some questions concerning the assistance which you have received from your lawyer in this case. In asking these questions, I'm trying to find out whether your lawyer's performance was within reasonable professional standards.
If you wish I can ask these questions outside the presence of your lawyer. Do you want your lawyer to stay or step outside?
A. [Petitioner]: He can stay.
* * * * * *
Q. Did you give your lawyer the names of any witnesses you thought could be helpful to you during the trial?
A. Yes.
Q. Did you discuss with your lawyer how these people could be located?
A. Yes.
Q. Did you discuss with Mr. Lundt what these people would say?
A. Yes.
Q. Do you know if Mr. Lundt spoke with them?
A. Yes, he spoke to her.
Q. Did Mr. Lundt answer all of your questions?
A. No.
Q. What question didn't Mr. Lundt answer? What did you ask him that he didn't answer?
A. Ask Charles Barnes was there anything wrong with my penis at the time this incident went down.
Q. And do you think that somehow would have affected the outcome of the trial?
A. Yes, I do.
Q. During the trial did Mr. Lundt say or do anything that you disagreed with?
A. No.
Q. Other than that one question, did he present all the witnesses and evidence you wanted presented?
A. Yes.
Q. Do you have any complaints with Mr. Lundt?
A. No.
Q. Do you think he did the best job he could for you?
A. Yes.
Trial Transcript, at 587, 589-90.
At no time does petitioner assert that he was prevented from testifying. At the evidentiary hearing on his Rule 29.15 motion, petitioner did not present any evidence or testimony on his claim that he was prevented from testifying. PCR Legal *1120 File, at 50. Therefore, that court concluded that petitioner had failed to carry his burden of proof on this issue. Id. Additionally, petitioner testified that his counsel spoke with the witnesses that might be helpful to his case, even though there was "one question" that had not been answered. Trial Transcript, at 589-90.
The court cannot grant an evidentiary hearing on this claim because it relies on a factual predicate that could have been discovered previously through due diligence but was not. 28 U.S.C. § 2254(e)(2)(A)(ii). Nonetheless, after reviewing the record, the court concludes that counsel's behavior at petitioner's trial did not fall below an objective standard of reasonableness. See Strickland, 466 U.S. at 687, 104 S.Ct. 2052.
This ground is without merit.

GROUND FOUR
Petitioner's fourth claim is that he was denied effective assistance of counsel on direct appeal when that counsel failed to challenge the assault convictions and failed to raise the corroboration rule with respect to all counts against him.
Petitioner was entitled to effective assistance of appellate counsel on his direct appeal as of right. Evitts v. Lucey, 469 U.S. 387, 393-94, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985). However, appellate counsel need not advance every argument, regardless of merit, urged by appellant. Id. at 394, 105 S.Ct. 830. Petitioner must demonstrate that his appellate counsel was deficient and that he was prejudiced as a result. Strickland, 466 U.S. at 687, 104 S.Ct. 2052. Absent contrary evidence, this court may conclude that appellate counsel's failure to raise a claim was an exercise of "sound appellate strategy in the `process of winnowing out weaker arguments on appeal and focusing on those more likely to prevail.'" Sidebottom v. Delo, 46 F.3d 744, 759 (8th Cir.) (quoting Smith v. Murray, 477 U.S. 527, 536, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986)), cert. denied, 516 U.S. 849, 116 S.Ct. 144, 133 L.Ed.2d 90 (1995).
Regarding petitioner's claim that his counsel failed to challenge his assault convictions, the court concludes that this was very likely a strategic decision on the part of counsel. "Strategic decisions made after diligent investigation are `virtually unchallengeable.'" Johns v. Bowersox, 203 F.3d 538, 546 (8th Cir.2000) (quoting Strickland, 466 U.S. at 690, 104 S.Ct. 2052). Petitioner was convicted of two counts of sodomy, for which he received consecutive terms of life and twenty years. His convictions for three counts of misdemeanor assault carried penalties of one year for each count. It would be logical for counsel to give greater attention to the appeal of petitioner's more serious convictions, which carried a much higher penalty.
Furthermore, the three terms of one year were to run concurrently with the two terms of five years for the two counts of endangering the welfare of a child. The court notes that these two counts were challenged by petitioner's appellate counsel, one successfully. Therefore, assuming that counsel was objectively unreasonable for failing to challenge the assault convictions, petitioner was not prejudiced. Even if counsel was successful in overturning all three assault convictions, that would only take three terms of one year from petitioner's overall sentence, all three of which were to run concurrently to the two terms of five years.
Regarding petitioner's claim that he was denied effective assistance of appellate counsel when that counsel failed to raise the corroboration rule with respect to all counts against him, the Missouri Supreme Court has held as follows:
[T]he rule in this state is that a conviction in cases of rape may be had upon the uncorroborated evidence of the prosecutrix. It is only in those cases where the evidence of the prosecutrix is of a contradictory nature or, when applied to the admitted facts in the case, her testimony *1121 is not convincing and leaves the mind of the court clouded with doubt, that she must be corroborated or a judgment cannot be sustained.
State v. Baldwin, 571 S.W.2d 236, 239 (Mo. banc 1978) (citing State v. Burton, 355 Mo. 467, 196 S.W.2d 621, 622-23 (1946)); see also State v. Nelson, 818 S.W.2d 285, 289 (Mo.Ct.App.1991) ("the exception requiring corroboration is restricted" and "is limited to inconsistencies in the victim's statements....").
The record reflects that the testimony of L.B. is not so inconsistent as to meet the limited exception, which requires corroboration. Therefore, appellate counsel's decision not to raise the corroboration issue on appeal, which probably would not have been successful, does not fall below an objective standard of reasonableness. See Strickland, 466 U.S. at 687, 104 S.Ct. 2052.
This ground is without merit.
The petition of George Hunter for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 will be dismissed without further proceedings. Any pending motions will be denied as moot.