# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 04-3827

_____

William L. Rousan,

        Appellant,

v.

Donald P. Roper, Superintendent,
Potosi Correctional Center,

        Appellee.

Appeal from the United States
District Court for the Eastern
District of Missouri.

_____

Submitted: November 16, 2005
Filed: February 8, 2006

_____

Before ARNOLD, MURPHY and GRUENDER, Circuit Judges.

_____

GRUENDER, Circuit Judge.

A Missouri state court sentenced William L. Rousan ("Rousan") to death after he was convicted of two counts of first-degree murder. The Missouri Supreme Court affirmed the convictions and sentence and subsequently affirmed the denial of Rousan's motion for post-conviction relief. Rousan timely petitioned for a writ of habeas corpus under 28 U.S.C. § 2254, seeking relief on nineteen separate grounds.

The district court[1] denied habeas relief but granted a certificate of appealability on eight of the grounds. Rousan now appeals the denial of the writ on those eight grounds. We affirm.

## I.    BACKGROUND

In September 1993, Rousan resided at the farm of his girlfriend, Mary Lambing. Rousan, his son, Brent Rousan ("Brent"), and his brother, Robert Rousan ("Robert"), decided to steal cattle from the nearby farm of sexagenarians Charles and Grace Lewis. They drove to the Lewis farm in Rousan's truck. During the drive, the three men discussed the prospect of killing the Lewises and agreed that "if it had to be done it had to be done."

Rousan parked the truck approximately two miles from the Lewis farm. Rousan then pulled out Lambing's .22 caliber rifle and loaded it "in case anyone was home." Brent asked to be the one who carried the rifle, stating that he was "man enough to do whatever needed to be done and that he would use the weapon." After debating whether Brent was "man enough," Rousan yielded the gun to Brent. He warned Brent that if they were caught, they would "fry." The three men then approached on foot to within viewing distance of the Lewis residence and sought cover behind a fallen tree.

The three men lay in wait until the Lewises returned to their residence that afternoon. Charles Lewis mowed the lawn, while Grace Lewis talked on the phone to the couple's daughter. Brent became impatient and said he wanted to "do it." Rousan instructed Brent to remain behind the tree while he and Robert secured the house. Before Rousan reached the house, however, Charles Lewis spotted Brent and shouted at him. Brent shot Charles Lewis six times with the rifle, causing his death.

---

[1]The Honorable Rodney W. Sippel, United States District Judge for the Eastern District of Missouri.

Inside the house, Grace Lewis told her daughter on the phone that she heard gunfire and hung up. When Grace ran out the front door to investigate, Brent shot her several times, fracturing both of her arms. Grace turned and ran back into the house. Rousan followed. Rousan placed a garment bag over Grace's head and the upper part of her body, picked her up, carried her back outside and placed her on the ground. At that point, Grace was still alive. Rousan instructed Brent to "finish her off." Brent fired one shot into Grace's head. That shot was fatal.

Rousan, Brent and Robert took the bodies to the Lambing farm and buried them. About a year later, Rousan's brother-in-law called the police, believing the call to be anonymous, and informed them where the Lewises' killer resided. The police traced the call to Rousan's brother-in-law, interviewed him for more information, and eventually apprehended Rousan hiding on another nearby farm.

A jury found Rousan guilty on two counts of first-degree murder for the murders of Grace and Charles Lewis. The jury recommended a death sentence on both counts, finding five statutory aggravating circumstances in reaching each decision. The trial judge pronounced a death sentence for the murder of Grace Lewis and a sentence of life without parole for the murder of Charles Lewis. On direct appeal, the Missouri Supreme Court affirmed the convictions and sentences. *State v. Rousan*, 961 S.W.2d 831 (Mo. banc 1998). After exhausting his state-law post-conviction remedies, *see Rousan v. State*, 48 S.W.3d 576 (Mo. banc 2001), Rousan sought a writ of habeas corpus under 28 U.S.C. § 2254 on nineteen separate grounds. The district court denied habeas relief but granted a certificate of appealability on the following eight claims: (1) the striking of three jurors for cause violated Rousan's rights under the Sixth, Eighth and Fourteenth Amendments; (2) insufficient evidence supported the conviction for first-degree murder of Charles Lewis, violating the due process clause of the Fourteenth Amendment; (3) the admission into evidence of victim photographs violated due process; (4) trial counsel was ineffective for failing to move to redact references to Rousan's prior convictions when Rousan's statement

to police was introduced as evidence; (5) the prosecutor's penalty phase closing argument violated due process; (6) a jury instruction on accomplice liability prejudicially confused the jury, violating due process; (7) a jury instruction on statutory aggravating circumstances prejudicially confused the jury, violating Rousan's rights under the Eighth and Fourteenth Amendments; and (8) the trial court's refusal to instruct on specific non-statutory mitigating circumstances, violating Rousan's rights under the Eighth and Fourteenth Amendments.

## II.    DISCUSSION

We review the district court's findings of fact for clear error and its conclusions of law de novo. *Lyons v. Luebbers*, 403 F.3d 585, 592 (8th Cir. 2005). To succeed on a claim for habeas relief under § 2254, an applicant must show that the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Antiterrorism and Effective Death Penalty Act, 28 U.S.C. § 2254(d) ("AEDPA"). "A decision is 'contrary to' federal law . . . if a state court has arrived 'at a conclusion opposite to that reached by [the Supreme Court] on a question of law' or if it 'confronted facts that are materially indistinguishable from a relevant Supreme Court precedent' but arrived at an opposite result." *Davis v. Norris*, 423 F.3d 868, 874 (8th Cir. 2005) (quoting *Williams v. Taylor*, 529 U.S. 362, 405 (2000)) (alteration in *Davis*). "A state court unreasonably applies clearly established federal law when it 'identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'" *Id.*

(quoting *Williams*, 592 U.S. at 413) (alteration in *Davis*). In other words, it is not enough for us to conclude that, in our independent judgment, we would have applied federal law differently from the state court; the state court's application must have been objectively unreasonable. *Lyons*, 403 F.3d at 592. Finally, facts found by the state court are presumed to be correct unless the applicant can rebut the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## A. The Striking of Three Potential Jurors for Cause

Rousan claims the trial court violated his constitutional rights in striking three potential jurors for cause. Potential jurors may not be struck for cause simply because they state general conscientious or religious scruples with regard to the death penalty. *Gray v. Mississippi*, 481 U.S. 648, 657 (1987). However, a potential juror may be struck for cause if his views "would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." *Wainwright v. Witt*, 469 U.S. 412, 424 (1985) (quotation omitted). In striking such a juror, it is not necessary to prove with "unmistakable clarity" that a potential juror's ability is impaired. *Id*.

Rousan points to statements made during voir dire by each of the three potential jurors, venirepersons Cowan, Henkins and Davis, to the effect that they could put aside their personal reservations and apply the law as instructed with regard to the death penalty:

> DEFENSE COUNSEL: [Y]ou personally will be satisfied if they prove the defendant guilty beyond a reasonable doubt to you, is that right?
>
> COWAN: Yes.
>
> DEFENSE COUNSEL: You won't make them do more than what the law says, you will apply the burden of proof which says that the State must prove the defendant guilty beyond a reasonable doubt, that's the standard you use?

-5-

COWAN:  Yes.

\*\*\*

DEFENSE COUNSEL:  Can you set aside your opinion for the purposes of doing citizenship duty as a juror . . . ?

HENKINS:  I believe so.

\*\*\*

COURT:  Could you follow the instructions and give realistic consideration to both sides?

DAVIS:  Yes.

COURT:  Could you under any circumstances return a verdict of death in a case?

DAVIS:  Yes, I think.

The Missouri Supreme Court summarized the voir dire of the three potential jurors as follows:

During the state's voir dire, venireperson Cowan expressed doubt that he could vote for the death penalty.  He also stated that "there would have to be no doubt at all" before he would vote to impose the punishment of death and that he probably would require more proof of guilt in a capital case than in other cases.  In response to later questions, however, Cowan equivocated about his ability to follow the law.  Cowan stated that he could sign the death verdict if he were foreman.  During the defense's voir dire, Cowan stated a number of times that he could follow the law, but also stated once that he was not sure he could do so.  When later questioned by the court and by the state, Cowan stated that he was not sure whether he would require extra proof in a capital case and that he was not sure that his nerves would "hold up" during the trial.  Based in

part on Cowan's increasing indications of stress during voir dire, the court sustained the state's motion to strike Cowan for cause.

\*\*\*

Venireperson Henkins stated unequivocally that she could not vote for the death penalty. She later stated to appellant's counsel, "I can't conceive of me voting that way." In response to further questioning about whether she could set aside her opinion for purposes of doing her duty as a citizen, however, Henkins offered, "I believe so."

The record shows that venireperson Henkins repeatedly and unequivocally indicated that she could not vote for the death penalty. Despite her one equivocal statement to the contrary, the trial court clearly did not err in sustaining the state's motion to strike venireperson Henkins for cause.

Venireperson Davis initially equivocated about whether he could vote for the death penalty. In response to further questions from the state about voting for the death penalty, Davis stated, "It would be very hard, I honestly do not know if I could do this." The state then asked whether Davis could sign the death verdict if he were the foreperson. Davis stated "no" and then repeated that he would be unable to do that. During the defense's voir dire, Davis stated, "I honestly don't know that I could vote for the death penalty." He later repeated his uncertainty regarding his ability to impose this punishment.

*State v. Rousan*, 961 S.W.2d at 839-40 (citations omitted).

The Missouri Supreme Court then summarized its response to Rousan's claim:

Although the juror's ability to follow the law is the ultimate issue in capital cases, the court may, and should, consider a venireperson's answers to all questions relevant to this issue, not just the questions phrased in one particular way. In each of these cases, the totality of the voir dire establishes that the trial court did not abuse its discretion in sustaining the state's motion to strike for cause.

*Id.* at 841.

The availability of habeas relief for a claim that the state court improperly struck a potential juror for cause is both a legal and factual question. *Kinder v. Bowersox*, 272 F.3d 532, 544 (8th Cir. 2001). First, the Missouri Supreme Court's holding was not contrary to, nor an unreasonable application of, clearly established federal law. The Missouri Supreme Court correctly identified the governing principle—that the ultimate issue is the potential juror's ability to follow the law as instructed by the court, rather than the potential juror's personal views about the death penalty. *Gray*, 481 U.S. at 657-58; *Wainwright*, 469 U.S. at 424. It was reasonable to apply that principle to the facts of the case by examining the totality of the responses of each potential juror during voir dire, rather than relying on isolated responses that appeared favorable to Rousan's argument. Second, there is no clear and convincing evidence to rebut the presumption of correctness we must afford to the state court's factual finding that the performance of the three potential jurors would be substantially impaired. *See Kinder*, 272 F.3d at 543 ("In this case, Judge Blackwell found that regardless of their recantations or rehabilitation, the four jurors needed to be excused for cause. It was 'peculiarly within [the] trial judge's province' to evaluate the 'demeanor and credibility' of the venire members and to make that determination.") (quoting *Wainwright*, 469 U.S. at 428) (alteration in *Kinder*). Therefore, we affirm the district court's denial of habeas relief based on the claim that the trial court violated Rousan's constitutional rights in striking three potential jurors for cause.

**B. Sufficiency of the Evidence to Support the Conviction for First-Degree Murder of Charles Lewis**

Rousan contends that the evidence did not support a finding that he deliberated in the killing of Charles Lewis. Under Missouri law, deliberation, described as "cool reflection upon the victim's death for some amount of time, no matter how short," is required for a first-degree murder conviction under an accomplice liability theory and may not be imputed from an accomplice. *State v. O'Brien*, 857 S.W.2d 212, 217-18 (Mo. banc 1993). Reviewing all the facts in a light most favorable to the verdict, the Missouri Supreme Court determined that a reasonable juror could have found

deliberation beyond a reasonable doubt. *State v. Rousan*, 961 S.W.2d at 841-42. That is precisely the analysis required by federal law. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

We find no clear and convincing evidence in the record to rebut the presumption of correctness in the state court's factual finding. In particular, Rousan's agreement that "if it had to be done it had to be done," his act of loading the rifle "in case anyone was home" and his warning as he handed the rifle to Brent that they would "fry" if they were caught support the finding that Rousan deliberated in the killing of Charles Lewis. Therefore, the district court did not err in denying habeas relief on this ground.

## C.  The Admission into Evidence of Victim Photographs

The trial court admitted seven photographs of the victims' bodies taken after the bodies were recovered. The bodies, recovered one year after the murders, were severely decomposed. Rousan argues the gruesome appearance of the bodies rendered the photographs unfairly prejudicial.

"Questions regarding admissibility of evidence are matters of state law, and they are reviewed in federal habeas inquiries only to determine whether an alleged error infringes upon a specific constitutional protection or is so prejudicial as to be a denial of due process." *Logan v. Lockhart*, 994 F.2d 1324, 1330 (8th Cir. 1993). The petitioner must show that "the alleged improprieties were so egregious that they fatally infected the proceedings and rendered his entire trial fundamentally unfair." *Anderson v. Goeke*, 44 F.3d 675, 679 (8th Cir. 1995) (quotation omitted).

The Missouri Supreme Court found that the photographs were probative because they "tended to corroborate the testimony of Robert Rousan, one of the state's key witnesses," "assisted the jury in understanding the testimony of the pathologist" and "assisted the state's proof of deliberation" by showing that Grace Lewis was bound and shot at close range, *State v. Rousan*, 961 S.W.2d at 844-45, and concluded

that "this Court cannot say that the allegedly prejudicial impact of these photographs outweighed their probative value [or that] the admission of the photographs caused the jury to act on the basis of passion, rather than reason," *id.* at 845. This was not contrary to, nor an unreasonable application of, clearly established federal law. *See Kuntzelman v. Black*, 774 F.2d 291, 292-93 (8th Cir. 1985) (per curiam) (finding no error of constitutional magnitude in the admission of "flagrantly gruesome" photographs where the photographs "were at least arguably relevant and probative in showing the identity and condition of the deceased, the location of the wound, and the intent of [the petitioner] in firing the shot that killed [the victim]"). We also find that the admission of the photographs, even if it had been erroneous, did not "fatally infect the proceedings," *Anderson*, 44 F.3d at 679, because "[t]he jury's finding . . . clearly rests on a substantial factual basis, even absent the photographic evidence in controversy here," *Kuntzelman*, 774 F.2d at 292. Therefore, the district court did not err in denying habeas relief on this ground.

## D.   Ineffectiveness of Trial Counsel for Not Moving to Redact References to Prior Convictions from Rousan's Statement to Police

Rousan referred to his prior convictions in his videotaped confession to the police. The police did not prompt Rousan to talk about the convictions; rather, Rousan volunteered the information to explain how he had initially met the Lewises. *Rousan v. State*, 48 S.W.3d at 590-91. The videotaped confession was played at trial, and trial counsel objected to the inclusion of Rousan's mention of his illegal drug use, but not to Rousan's references to his other prior convictions for assault, rape, unlawful use of a weapon, and escape. Rousan argues that his trial counsel's failure to move to redact those references from the confession allowed the jury to convict him improperly on the basis of his prior convictions.

In order to overturn a conviction on grounds of ineffective assistance of counsel, the defendant must show that his trial counsel's performance fell below the standard of customary skill and diligence that a reasonably competent attorney would display and that there is a reasonable probability that the outcome would have been

different but for the substandard actions of counsel. *Strickland v. Washington*, 466 U.S. 668, 694 (1984). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*.

The Missouri Supreme Court found no reasonable probability that the failure to move to redact the references to those prior convictions prejudiced Rousan because (1) the jury already had learned of the prior convictions during voir dire and had been given a limiting instruction that they could not use the convictions to determine guilt or innocence, and (2) the objection would have been fruitless because the references were necessary to explain the story Rousan told in his confession.[2] *Rousan v. State*, 48 S.W.3d at 590-91. The Missouri Supreme Court properly applied *Strickland*, and its analysis was not contrary to, nor an unreasonable application of, clearly established

---

[2]Rousan's story to the police was as follows:

[Rousan] told the police that he had first met the victims in 1975. He saw them again in 1989 after he escaped from custody in the State of Washington and sought refuge at the Lewises' farm. When Mr. Lewis discovered [Rousan] hiding in his barn, he fed him, clothed him, and when [Rousan] left the farm two weeks later, Mr. Lewis gave him twenty dollars. Shortly after that time, [Rousan] was apprehended and returned to prison.

After release from prison in June of 1993, [Rousan] returned to the farm to thank Mr. and Mrs. Lewis for their kindness and to rekindle their friendship, he said. According to [Rousan], Mrs. Lewis was in poor health. [Rousan] explained that Mr. Lewis asked [Rousan] to kill Mrs. Lewis to put her out of her misery and to kill him because he did not want to live without his wife. [Rousan] also claimed that he was hired by Charles Lewis, IV, son of Mr. and Mrs. Lewis, to kill them in exchange for fifty-thousand dollars. [Rousan] maintained, however, that his actual motivation for the murders was mercy.

*State v. Rousan*, 961 S.W.2d at 838-39.

-11-

federal law. Therefore, the district court did not err in denying habeas relief on this ground.

### E. The Prosecutor's Penalty Phase Closing Argument

During penalty-phase rebuttal closing argument, the prosecutor addressed the defense's request for mercy. The prosecutor stated that "[m]ercy is good" but went on to make the state's argument that Rousan did not deserve mercy under the facts and circumstances of the case. The prosecutor then concluded, "The defense has asked you for mercy and what they are hoping for is weakness. . . . Weakness is something we can no longer afford. Do your duty." Rousan argues that the closing admonition not to be "weak" improperly influenced the jury's decision to recommend the death penalty.

To grant habeas relief based on an inappropriate comment from a prosecutor, the comment must be so inappropriate as to make the trial fundamentally unfair. *See Darden v. Wainwright*, 477 U.S. 168, 180-81 (1986). There must be a "reasonable probability" that the error affected the jury's verdict and that without the error, the jury's verdict would have been different. *Newlon v. Armontrout*, 885 F.2d 1328, 1336-37 (8th Cir. 1989).

The Missouri Supreme Court found that the prosecutor should have avoided suggesting that the jury would be "weak" if it returned a certain verdict. However, the Missouri Supreme Court found no reversible error because the statement was brief, isolated, and followed a proper discussion of mercy and the jury's role in sentencing. *State v. Rousan*, 961 S.W.2d at 850-51. The Missouri Supreme Court did not act contrary to, nor unreasonably apply, clearly established federal law in determining that there was no reasonable probability that the verdict would have been different absent the prosecutor's statement. *See, e.g.*, *Kinder*, 272 F.3d at 551 (holding it was not an unreasonable application of federal law for the Missouri Supreme Court to find no reversible error where the prosecutor stated during penalty-phase argument that the

defendant was "pure evil. Evil stares at you in the courtroom, and I ask you to stare back and do not blink. . . . We don't want to share our streets one day with evil. We cannot risk one day sharing our lives and our world with evil."). Therefore, the district court did not err in denying habeas relief on this ground.

### F. The Jury Instruction on Accomplice Liability

The general accomplice-liability jury instruction given in Rousan's trial stated that "[a] person is responsible . . . for the conduct of another person . . . if, for the purpose of committing that offense, he aids or encourages the other person in committing it." Rousan argues that the jury could have used that instruction to ascribe to Rousan liability for Brent's commission of first-degree murder without a finding that Rousan deliberated. To support a conviction for first-degree murder based on accomplice liability, the deliberation element cannot be imputed; the state had to prove deliberation by Rousan. *State v. Rousan*, 961 S.W.2d at 841.

Where the defendant alleges that jury instructions may have been erroneously interpreted, the proper inquiry under federal law "is whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that prevents the consideration of constitutionally relevant evidence." *Boyde v. California*, 494 U.S. 370, 380 (1990). In conducting this analysis, the jury instructions must be viewed as a whole. *Id.* at 378.

The instructions in this case are similar to those we considered in *Johns v. Bowersox*, 203 F.3d 538 (8th Cir. 2000). The petitioner in *Johns* challenged a portion of the jury instructions that required the jury to find only that *either* the defendant or his accomplice acted with deliberation. *Id.* at 542-43. However, the verdict-directing instruction also required a finding "that *with the purpose of promoting or furthering the commission of capital murder*, the defendant acted together with or aided or encouraged [the accomplice] in committing that offense." *Id.* at 543 (emphasis added). Applying the pre-AEDPA standard of review, we agreed with the Missouri

Supreme Court that these instructions, viewed as a whole, "effectively required the jury to find deliberation" by the petitioner. *Id.*

Similarly, in this case, the verdict-directing jury instructions for both first-degree murder counts required the jury to find that "the defendant aided, or encouraged [the murder] and did so after deliberation, which means cool reflection upon the matter for any length of time no matter how brief," in order to find Rousan guilty. *See State v. Rousan*, 961 S.W.2d at 847-48. The Missouri Supreme Court, viewing the jury instructions as a whole, found no reasonable likelihood that the general accomplice-liability instruction caused the jury to ignore the explicit requirement for a finding of deliberation by Rousan in the verdict-directing instructions. *Id.* As suggested by *Johns*, the Missouri Supreme Court's conclusion in this case was not contrary to, nor an unreasonable application of, clearly established federal law. Therefore, we find that the district court did not err in denying habeas relief on this ground.

## G. The Jury Instruction on Statutory Aggravating Circumstances

Rousan contends that the jury instruction on statutory aggravating circumstances in the murder of Grace Lewis prejudicially confused the jury. Jury Instruction No. 25 read as follows (emphasis added):

> In determining the punishment to be assessed under Count I against defendant for the murder of Grace Lewis, you must first unanimously determine whether one or more of the following statutory aggravating circumstances exists:
>
> * * *
>
> 4. Whether the defendant directed Brent Rousan to murder Grace Lewis.
>
> 5. Whether the murder of Grace Lewis involved depravity of mind and whether, as a result thereof, the murder was outrageously and wantonly

vile, horrible, and inhuman. You can make a determination of depravity of mind only if you find:

*That the defendant killed Grace Lewis* after she was bound or otherwise rendered helpless by defendant or Brent Rousan and that defendant thereby exhibited a callous disregard for the sanctity of all human life.

The jury found the presence of five aggravating circumstances in the murder of Grace Lewis, including the fourth and fifth aggravating circumstances as listed above.[3] Rousan argues that the use of the word "killed" instead of "murdered" in describing the fifth aggravating circumstance prejudicially confused the jury because "killing," unlike "murder," could not be imputed to Rousan as an accomplice of Brent. Rousan contends the jury was confused because it found that he both directed Brent to commit the murder, as stated in the fourth aggravating circumstance, and "killed" Grace Lewis himself, as stated in the fifth. Because Rousan did not object to the instruction at trial, this claim was reviewed by the Missouri Supreme Court for plain error resulting in manifest injustice.[4] *State v. Rousan*, 961 S.W.2d at 852.

Where a petitioner claims that an instruction confused the jury, federal law requires the court to determine "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Estelle v. McGuire*, 502 U.S. 62, 72 (1991) (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)). The challenged instruction "must be considered in the context of the instructions as a whole and the trial record." *Id.*

---

[3]The other three statutory aggravating circumstances that the jury found to exist were a 1988 Washington conviction for rape, a 1998 Washington conviction for assault and the fact that Rousan murdered Grace Lewis while he also was engaged in the unlawful homicide of Charles Lewis. Rousan does not challenge the jury's finding on these three statutory aggravating circumstances.

[4]An issue that receives plain-error review on direct appeal in state court is not procedurally barred from review under the AEDPA. *James v. Bowersox*, 187 F.3d 866, 869 (8th Cir. 1999).

-15-

The Missouri Supreme Court agreed with Rousan that the fourth and fifth aggravating circumstances were inconsistent with each other. However, it found the inconsistency would not undermine confidence in the jury's penalty-phase deliberations because:

> The state's theory throughout trial, the evidence, and the jury's finding at the close of the guilt phase supported a sole finding that appellant was guilty of first degree murder as an accomplice; therefore, the statement in the depravity of mind aggravator that "defendant killed Grace Lewis" would be insufficient to confuse the jury as to the nature of appellant's involvement in the murders.

*State v. Rousan*, 961 S.W.2d at 853. The Missouri Supreme Court's analysis of the allegedly confusing jury instruction was not contrary to, nor an unreasonable application of, clearly established federal law.

The Missouri Supreme Court did invalidate the jury's finding that the fifth aggravating circumstance was present because there was insufficient evidence to show Rousan "killed" Grace Lewis himself, rather than by imputation as an accomplice to Brent. *Id.* However, that court found that even if the fourth and fifth aggravating circumstances were both invalidated, the remaining three aggravating circumstances found by the jury would still support the death sentence because, under Missouri law, "only one valid aggravating circumstance need exist to uphold a death sentence." *Id.*

Rousan contends that a death sentence premised on a jury's finding of even one invalid aggravating circumstance is unconstitutional because the invalid aggravating circumstance may have skewed how the jury weighed aggravating and mitigating evidence. We have long analyzed the effect of an invalid aggravating circumstance on the constitutionality of a death sentence by first determining whether the defendant was sentenced in a "weighing" or "non-weighing" state. *See, e.g.*, *Clay v. Bowersox*, 367 F.3d 993, 1005 (8th Cir. 2004) ("In a nonweighing state such as Missouri, a finding of one valid aggravating circumstance renders harmless the conclusion that a second aggravating circumstance was constitutionally infirm."); *Sloan v. Delo*, 54

F.3d 1371, 1385 & n.13 (8th Cir. 1995). However, in a recently announced decision, *Brown v. Sanders*, No. 04-980 (U.S. Jan. 11, 2006), the Supreme Court has stated that the "weighing/non-weighing scheme is accurate as far as it goes, but it now seems to us needlessly complex and incapable of providing for the full range of possible variations" in state death-penalty sentencing procedures. *Id.*, slip op. at 7. Instead, "we are henceforth guided by the following rule: An invalidated sentencing factor (whether an eligibility factor or not) will render the sentence unconstitutional by reason of its adding an improper element to the aggravation scale in the weighing process *unless* one of the other sentencing factors enables the sentencer to give aggravating weight to the same facts and circumstances." *Id.* at 7-8 (footnote omitted). In other words, where the allegation of error is "the skewing that could result from the jury's considering *as aggravation* properly admitted evidence that should not have weighed in favor of the death penalty," *id.* at 8, constitutional error occurs "only where the jury could not have given aggravating weight to the same facts and circumstances under the rubric of some other, valid sentencing factor," *id.* at 9. In addition to the narrow situation addressed in *Sanders*, the Court recognized that constitutional error also may arise from "other distortions caused by the invalidated factor beyond the mere addition of an improper aggravating element." *Id.* at 8 n.6.

Analyzing California's death-penalty sentencing procedure, the Supreme Court noted that the jury first must find the existence of at least one statutory "eligibility factor," or "special circumstance" in the parlance of the California statute, to render the defendant eligible for the death penalty. *Id.* at 9. If the jury finds one of these eligibility factors, it then considers a separate list of "sentencing factors" in determining whether the individual defendant merits the death penalty. The list of sentencing factors directs the jury to consider, among other things, any special circumstances found in the eligibility phase and the circumstances of the crime in general. *Id.* at 9. The jury in habeas petitioner Sanders's case found four special circumstances to be present and pronounced a death sentence; two of the special circumstances were later invalidated by the state supreme court. *Id.* at 10-11. The Supreme Court found that the jury's consideration of the two invalidated eligibility factors did not render Sanders's death sentence unconstitutional because at least one

eligibility factor was valid and "[a]ll of the aggravating facts and circumstances that the invalidated factor permitted the jury to consider were also open to their proper consideration under one of the other factors," namely the general circumstances-of-the-crime sentencing factor. *Id.* at 10.

The Missouri death-penalty sentencing procedure has the same salient aspects as the California scheme considered in *Sanders*. In Rousan's case, Jury Instruction No. 25 instructed the jury that "if you do not unanimously find from the evidence beyond a reasonable doubt that at least one of the foregoing statutory aggravating circumstances exists, you must return a verdict [of] imprisonment for life." The statutory aggravating factors fulfill the role of the "eligibility factors" described in *Sanders*. Jury Instruction No. 26 instructed the jury that, in the event it had found the presence of at least one of the statutory aggravating circumstances listed in Instruction No. 25, it was then to consider all evidence from the guilt and penalty phases of the trial and "decide whether there are facts and circumstances in aggravation of punishment which, taken as a whole, warrant the imposition of a sentence of death upon the defendant." This is analogous to the general circumstances-of-the-crime sentencing factor in *Sanders*.

We find that the fourth and fifth aggravating circumstances did not permit the jury to consider any aggravating facts and circumstances that were not already "open to their proper consideration" as stated in Jury Instruction No. 26. *Sanders*, slip op. at 10. Thus "[t]he erroneous factor[s] could not have 'skewed' the sentence, and no constitutional violation occurred."[5] *Id.* Furthermore, we find no constitutional error

---

[5]We would reach the same result under the previous weighing/non-weighing jurisprudence. *See Clay*, 367 F.3d at 1005.

Contrary to Rousan's argument, the presence of an aggravating-versus-mitigating-factors weighing step anywhere in the jury instructions does not establish Missouri as a "weighing state" under that framework. In this case, the jury was required to find the existence of one of the listed statutory aggravating circumstances as a necessary prelude to contemplating the death penalty, but it was then instructed

arising from any "other distortions caused by the invalidated factor." *Id.* at 8 n.6; *see supra* 14-17 (discussing Rousan's claim that the invalid factor confused the jury).

We conclude that the Missouri Supreme Court did not act contrary to, nor unreasonably apply, clearly established federal law in determining that the inconsistent wording in the fifth aggravating circumstance did not prejudicially confuse the jury's death-penalty deliberations and that the first three aggravating circumstances found by the jury were each sufficient to permit the jury to consider the death penalty. Therefore, we find that the district court did not err in denying habeas relief on this ground.

**H.    The Trial Court's Refusal to Instruct on Specific Non-Statutory Mitigating Circumstances**

Missouri law lists seven specific mitigating circumstances that must be included in the jury instructions in a death penalty case if suggested by the evidence. R.S. Mo. § 565.032.3. Rousan proposed two additional specific mitigating circumstances for inclusion in the jury instructions that would have directed the jury to consider his

---

to consider, or "weigh," all facts and circumstances of the case in deciding whether the death penalty should apply. This establishes Missouri squarely as a non-weighing state. *See Stringer v. Black*, 503 U.S. 222, 229-30 (1992) ("[I]n Georgia [a non-weighing state], the jury must find the existence of one aggravating factor before imposing the death penalty, but aggravating factors as such have no specific function in the jury's decision whether a defendant who has been found to be eligible for the death penalty should receive it under all the circumstances of the case. Instead, under the Georgia scheme, in making the decision as to the penalty, the factfinder takes into consideration all circumstances before it from both the guilt-innocence and the sentence phases of the trial. These circumstances relate both to the offense and the defendant.") (internal quotations omitted); *Sloan*, 54 F.3d at 1385-86 ("In a nonweighing state such as Missouri, a finding of at least one aggravating circumstance is a threshold requirement to imposing a death sentence. Here the jury found one valid aggravating circumstance, that of multiple murders, and was free then to consider all evidence in aggravation and mitigation.")

"early life and upbringing" and the fact that "other participants in this crime have received sentences of less than death." The trial court rejected the two specific additional mitigating circumstances. However, the instruction stated, "You shall also consider any other facts or circumstances which you find from the evidence in mitigation of punishment." Rousan contends that the trial court's rejection of his two proffered specific circumstances violated his rights under the Eighth and Fourteenth Amendments.[6]

Once a jury has determined, through a process that channels and limits the jury's discretion to ensure that the death penalty is not imposed in an arbitrary or capricious manner, that a defendant is eligible for the death penalty, the jury must be allowed to conduct "a broad inquiry into all relevant mitigating evidence to allow an individualized determination" as to whether the death penalty is warranted in a specific case. *Buchanan v. Angelone*, 522 U.S. 269, 275-76 (1998). "[T]he State may shape and structure the jury's consideration of mitigation so long as it does not preclude the jury from giving effect to any relevant mitigating evidence." *Id.* at 276. There is no requirement that the jury be instructed on particular mitigating factors. *Weeks v. Angelone*, 528 U.S. 225, 232-33 (2000). "[T]he standard for determining whether jury instructions satisfy these principles [is] 'whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that prevents the consideration of constitutionally relevant evidence.'" *Buchanan*, 522 U.S. at 276.

---

[6]Rousan also argues that his two proposed specific mitigating circumstances should have been included in the instructions because they fit within two of Missouri's statutorily required mitigating circumstances. To the extent this claim challenges the Missouri courts' application of a Missouri statute, rather than alleging a violation of Rousan's constitutional rights, we cannot review it. *See Lupien v. Clarke*, 403 F.3d 615, 619 (8th Cir. 2005) ("We may not review questions of state law that have been decided by a state court, even under the deferential standard of 28 U.S.C. § 2254(d).") (internal quotation omitted).

The Missouri Supreme Court noted Rousan's acknowledgment that it had repeatedly rejected this argument in other cases, and it chose not to revisit the issue. *State v. Rousan*, 961 S.W.2d at 849. We have previously agreed with the Missouri Supreme Court's determination that an essentially identical instruction "adequately covered the jury's consideration of mitigating evidence and complied with constitutional requirements for the submission of mitigating circumstances in death penalty cases." *Tokar v. Bowersox*, 198 F.3d 1039, 1050 (8th Cir. 1999). Therefore, we find that the refusal to list Rousan's proffered specific mitigating circumstances in the jury instructions was not contrary to, nor an unreasonable application of, clearly established federal law. The district court did not err in denying habeas relief on this ground.

## III.  CONCLUSION

We conclude that the district court did not err in denying habeas relief on each of the eight grounds for which Rousan was granted a certificate of appealability. Therefore, we affirm the judgment of the district court denying the writ of habeas corpus.

_____