_____

No. 96-1185
_____

Glen Reed,            *
                      *
          Appellant,  *
                      * Appeal from the United States
     v.               * District Court for the
                      * Western District of Arkansas
United States of America,  *
                      *
          Appellee.   *

_____

          Submitted:  September 12, 1996

             Filed:  February 5, 1997
_____

Before McMILLIAN, LAY and MORRIS SHEPPARD ARNOLD, Circuit Judges.
_____

McMILLIAN, Circuit Judge.


     Glen Reed, a federal inmate, appeals from a final order entered in
the United States District Court[1] for the Western District of Arkansas,
adopting the report and recommendation of the
magistrate judge[2] and denying Reed's petition for post-conviction relief
pursuant to 28 U.S.C. § 2255.  United States v. Reed, Civil No. 95-5061
(W.D. Ark. Nov. 17, 1995) (order).  For reversal, Reed argues that the
district court erred in holding (1) his due process and confrontation
rights were not violated by the government's failure to disclose that a key
witness had been granted immunity in exchange for testifying against him
and (2) his Sixth Amendment right to effective assistance of trial counsel
was not violated.

_____

     [1]The Honorable H. Franklin Waters, Chief Judge, United States
District Court for the Western District of Arkansas.

     [2]The Honorable Beverly R. Stites, United States Magistrate
Judge for the Western District of Arkansas.

For the reasons discussed below, we affirm the order of the district court.

**BACKGROUND**

FACTS RELATED TO PETITIONER'S CONVICTION

On November 4, 1993, Reed, a former accountant in Fayetteville, Arkansas, and Ezra "Scotty" Maglothin, Jr., a former attorney, were indicted in federal court as co-defendants on three counts of mail fraud in violation of 18 U.S.C. § 1341, one count of aiding and abetting mail fraud in violation of 18 U.S.C. § 2, and one count of theft of government property in violation of 18 U.S.C. § 541. These charges against Reed and Maglothin stemmed from an alleged scheme to steal money from Maglothin's clients by fraudulently converting, for their own use, client money deposited in a trust account maintained by Maglothin at a Fayetteville bank.

On December 7, 1993, Maglothin filed a motion to sever the trial, which the district court granted. Maglothin, at his own trial, testified that Reed stole money from the clients without authorization. He denied having any fraudulent intent in his actions involving bank statements and other correspondence. On March 2, 1994, Maglothin was acquitted on all counts. On March 3, 1994, Reed's trial began, and Maglothin was subpoenaed by the prosecution to testify during Reed's trial. Maglothin again denied any criminal wrongdoing, testifying that his intent was to protect and invest the clients' money rather than to defraud the clients.

On March 7, 1994, the jury convicted Reed on three counts of mail fraud and a fourth count of theft of government property. Reed's theft of government property conviction was set aside on a motion for judgment of acquittal. United States v. Reed, 851 F. Supp. 1296, 1309-12 (W.D. Ark. 1994). The district court sentenced Reed to 24 months imprisonment, two years supervised

release, and restitution in the amount of $193,301.29. On appeal, Reed argued the evidence was insufficient to prove mail fraud, but this court disagreed and affirmed his convictions on those three counts. Id., 47 F.3d 288 (8th Cir. 1995).

FACTS RELATED TO NONDISCLOSURE OF IMMUNITY ALLEGATION

After Maglothin's and Reed's federal trials, the State of Arkansas charged Maglothin with theft of property. Maglothin moved to dismiss the state charges on the ground that he had been granted "use immunity" for his testimony during Reed's trial. Jim Rose, Maglothin's attorney throughout the federal trial and subsequent proceedings, testified as a witness at a pretrial hearing that, prior to Reed's trial, Rose discussed immunity for Maglothin with P.K. Holmes, the U. S. Attorney who prosecuted Reed's case, and that Holmes had orally agreed to grant Maglothin use immunity. Holmes testified that he first became aware of the use immunity issue after Maglothin filed the motion to dismiss the criminal charges in state court. Holmes testified that he distinctly remembered rejecting Rose's request for full immunity for Maglothin the day before Reed's trial began, and he did not recall telling Rose he would grant Maglothin use immunity. However, Holmes qualified his testimony by stating that Rose was known to him as a trustworthy and honorable person and, even though he (Holmes) had no recollection of granting use immunity, "[t]hat doesn't mean I didn't say it." Holmes testified that he never intended to offer any kind of immunity because he had no intention of further prosecuting Maglothin. Holmes also testified that he was never asked to put any immunity agreement in writing or on the record.

The state trial court found that there was no proof of any immunity agreement between Maglothin and the government, and thus, no immunity existed; accordingly, the state trial court denied Maglothin's motion to dismiss the charges against him. State v. Maglothin, No. CR 94-443 (Ark. Cir. Ct. Washington County Sept. 16,

1994).  Maglothin was convicted in state court on four counts of theft of property and sentenced to twelve years imprisonment.  On appeal, the Arkansas Court of Appeals affirmed.  Maglothin v. State, 924 S.W.2d 468 (Ark. Ct. App. 1996).

In the meantime, Reed had filed a § 2255 petition alleging that (1) the government failed to disclose that Maglothin had been granted use immunity, in violation of Brady v. Maryland, 373 U.S. 83 (1963), and (2) his trial counsel was ineffective under Strickland v. Washington, 466 U.S. 668 (1984).  An evidentiary hearing was held before a magistrate judge, who recommended that Reed's § 2255 petition be denied.  Reed's trial attorney, R. David Lewis, testified that the first time he became aware of any use immunity concerning Maglothin was at the § 2255 hearing.  After receiving additional testimony from Maglothin and Rose, the magistrate judge reviewed the transcript of the state court pretrial hearing on Maglothin's motion to dismiss his criminal case on the ground of use immunity.  The magistrate judge found that Maglothin had not been granted use immunity pursuant to 18 U.S.C. § 6003.  United States v. Reed, Civil No. 95-5061, slip op. at 7 (W.D. Ark. Oct. 23, 1995) (report and recommendation).  The magistrate judge further held that, even assuming there had been an oral grant of use immunity, the government's failure to disclose it was not material for purposes of applying Brady v. Maryland[3] nor did it actually prejudice Reed for purposes of Strickland v. Washington.[4]  Id. at 10.

---

[3]Brady v. Maryland, 373 U.S. 83, 87 (1963), held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."

[4]Under Strickland v. Washington, 466 U.S. 668, 687, 694 (1984), a convicted defendant's claim of ineffective assistance of counsel requires that the defendant show (1) counsel's performance was deficient and (2) that deficient performance prejudiced the defense such that, but for counsel's errors, the result of the proceeding
would have been different.

ADDITIONAL FACTS RELATED TO INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM

Prior to Reed's criminal trial, Reed's trial attorney requested that Maglothin send him copies of each and every check which Maglothin claimed Reed wrote without Maglothin's authority. Maglothin sent copies to Reed's attorney, via facsimile transmission, of six checks totaling $1,270.00. At Reed's trial, Maglothin testified that Reed allegedly took a much larger amount of money without authorization. Maglothin was not questioned about the facsimile transmitted checks, but the copies of the checks which Maglothin sent to Reed's attorney were admitted into evidence during Reed's testimony that he had specifically asked Maglothin to designate any unauthorized checks. The government objected to such testimony, but the district court found it admissible to impeach Maglothin's testimony and overruled the government's objection.

At the § 2255 hearing, Maglothin testified that the facsimile copies of the checks were not inclusive but only examples of numerous unauthorized checks. Reed's trial attorney testified that he did not cross-examine Maglothin about the six checks because acknowledging that those checks were unauthorized would have been inconsistent with Reed's theory of defense that he had done nothing wrong and that Maglothin had authorized him to write the checks.

The magistrate judge found that Reed's trial counsel had not been ineffective. The magistrate judge found that the facsimile transmissions of the checks and related conversations were admitted into evidence during Reed's testimony and that additional cross-examination of Maglothin would not have changed the outcome of the trial. Id.

Reviewing the case de novo, the district court adopted the findings and recommendations of the magistrate judge and denied Reed's § 2255 petition.  This appeal followed.

**DISCUSSION**

USE IMMUNITY

In § 2255 proceedings, this court reviews a district court's conclusions of law de novo.  United States v. Duke, 50 F.3d 571, 576 (8th Cir.), cert. denied, 116 S. Ct. 224 (1995).  Reed argues that the government's failure to disclose the grant of use immunity to Maglothin violated his right to due process.  Reed argues that the district court erred in concluding that the disclosure of Maglothin's alleged use immunity would not have affected the outcome of his trial.  Reed maintains that Maglothin agreed to testify as a government witness at Reed's trial only because he had been granted use immunity and that, if the jury had known that Maglothin had been granted use immunity (or even that Maglothin believed that he had been granted use immunity), the jury would have attributed less credibility to Maglothin's testimony.  See Giglio v. United States, 405 U.S. 150, 154 (1972) (non-disclosure of evidence affecting the credibility of a witness falls within the scope of Brady v. Maryland).  Reed also argues that the non-disclosure of any evidence that motivated Maglothin to embellish or fabricate his testimony violated his confrontation right under the Sixth Amendment.  Reed defines the issue before this court as whether the government failed to disclose information with impeachment value and not whether the formalities regarding the granting of statutory immunity were observed.

The government argues that there was no failure to disclose the grant of use immunity because no use immunity agreement existed.  We agree.  Under 18 U.S.C. §§ 6002 and 6003, a U.S. Attorney may request a court order compelling testimony necessary

to the public interest when an individual invokes the privilege against self-incrimination, and the compelled testimony or information directly or indirectly derived from the testimony may not be used against the witness in any criminal case except for a prosecution for perjury. See Kastigar v. United States, 406 U.S. 441 (1972). Statutory use immunity can only be granted upon request of the Attorney General. United States v. Robaina, 39 F.3d 858, 863 (8th Cir. 1994). We agree with the district court that Maglothin was not granted use immunity. First, there was no evidence that the U.S. Attorney at any time sought an application for use immunity pursuant to 18 U.S.C. §§ 6002 and 6003. Second, the U.S. Attorney did not orally agree to grant use immunity to Maglothin. Moreover, the government had no reason to assume that Maglothin believed he had been granted statutory immunity.

In the alternative, Reed reiterates his argument made in state court that, while his use immunity did not arise directly under 18 U.S.C. §§ 6002 and 6003 because the Attorney General did not approve the grant of such immunity, the facts of his case nevertheless created "equitable immunity" because the prosecutor made an express oral promise of immunity in exchange for Maglothin's testimony against Reed. Although the concept of equitable immunity is not well defined, Rowe v. Griffin, 676 F.2d 524, 526 n.3 (11th Cir. 1982), "the underlying principle is that when a promise of immunity induces a defendant to . . . cooperate with the government to his [or her] detriment, due process requires that the prosecutor's promise be fulfilled." United States v. Fuzer, 18 F.3d 517, 521 (7th Cir. 1994).[5] Maglothin argues that

_____

[5]The Fifth, Sixth, Seventh, and Eleventh Circuits and several district courts have addressed the concept of equitable immunity. See United States v. Fuzer, 18 F.3d 517, 521 (7th Cir. 1994); United States v. Weaver, 905 F.2d 1466, 1471-74 (11th Cir. 1990), cert. denied, 498 U.S. 1091 (1991); United States v. Keith, 764 F.2d 263, 264 n.1 (5th Cir. 1985); United States v. Short, 671 F.2d 178, 187 (6th Cir.), cert. denied, 457 U.S. 1119 (1982); United States v. McLaughlin, 769 F. Supp. 45, 47 (D.N.H. 1991), aff'd, 957 F.2d 12 (1st Cir. 1992); Arkebauer v. Kiley, 751 F. Supp. 783, 788 (C.D. Ill. 1990), rev'd, 985 F.2d 1351 (7th Cir. 1993); United States v. Cooke, 650 F. Supp. 991, 993 (D. Md. 1987); United States v. Carpenter, 611 F. Supp. 768, 774-75 (N.D. Ga. 1985); United States v. McBride, 571 F. Supp. 596, 615 (S.D. Tex. 1983), aff'd, 915 F.2d 1569 (5th Cir. 1990) (table). However, the doctrine of equitable immunity has never been considered by the Eighth Circuit.

equitable immunity is enforceable to the same extent as a formal grant of immunity under 18 U.S.C. § 6003.

In analyzing Maglothin's equitable immunity theory, we agree with the magistrate judge that there would have been no reason for the U.S. Attorney to believe Maglothin would invoke his Fifth Amendment privilege against compelled self-incrimination or that use immunity would be required to obtain Maglothin's testimony because Maglothin had already testified in his own trial that he had committed no criminal wrongdoing and blamed Reed for the losses suffered by his clients. United States v. Reed, slip op. at 8 (Oct. 23, 1995). We further agree with the magistrate judge that, even assuming the Eighth Circuit would recognize the doctrine of equitable immunity, the government's failure to disclose the grant of use immunity was not material for purposes of applying Brady v. Maryland nor did it actually prejudice Reed for purposes of applying Strickland v. Washington. Id. at 10. We conclude that the district court did not err in holding that Reed failed to show a violation of his due process or confrontation rights.

INEFFECTIVE ASSISTANCE OF COUNSEL

We review the issue of ineffective assistance of counsel de novo and review the district court's findings of underlying predicate facts under the clearly erroneous standard. Auman v. United States, 67 F.3d 157, 162 (8th Cir. 1995). Reed argues that he received ineffective assistance of counsel at trial because his trial attorney failed to cross-examine Maglothin about the six checks which Maglothin sent to Reed's attorney.

In order to establish a violation of the Sixth Amendment right to effective assistance of counsel, a convicted defendant must establish that (1) trial counsel's performance was deficient and (2) the deficient performance prejudiced the defense so as to deprive the defendant of a fair trial. Strickland v. Washington, 466 U.S. at 687; Sherron v. Norris, 69 F.3d 285, 290 (8th Cir. 1995). The proper standard for evaluating attorney performance is that of reasonably effective assistance. Strickland v. Washington, 466 U.S. at 687. The defendant must show that counsel's representation fell below an objective standard of reasonableness. Id. at 688. Judicial scrutiny of counsel's performance must be highly deferential and the court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Id. at 689. With regard to the required showing of actual prejudice, the defendant must show that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. Id. at 694.

We agree with the magistrate judge's findings, adopted by the district court, that (1) Reed failed to show that his trial attorney's decision not to cross-examine Maglothin about the six checks was not sound trial strategy and (2) even assuming his trial attorney should have cross-examined Maglothin about the copies of the six checks, Reed failed to show that his trial attorney's failure to do so actually prejudiced his defense. We therefore conclude that the district court did not err in holding that Reed was not denied effective assistance of counsel.

**CONCLUSION**

Accordingly, the order of the district court is affirmed.

A true copy.

Attest:

        CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.