Richard M. FLEMING, Petitioner,

v.

UNITED STATES of America,
Respondent.

No. 4:10CV3217.

United States District Court,
D. Nebraska.

Dec. 15, 2010.

Richard M. Fleming, Reno, NV, pro se.

## MEMORANDUM AND ORDER

RICHARD G. KOPF, District Judge.

Richard M. Fleming ("Fleming") filed a Petition for Writ of Habeas Corpus in the United States District Court for the District of Nevada and that court transferred the Petition to this court. (Filing No. 1.) Because the Petition is frivolous and without merit for both procedural and substantive reasons, it will be dismissed. I also take this opportunity to declare that the complaint filed with the Nebraska Counsel on Discipline against Michael Hansen ("Hansen"), Fleming's lawyer, is wholly without merit and likely asserted for the improper purpose of bolstering Fleming's frivolous litigation in this court.

### BACKGROUND

*Case No. 4:07CR3005—the Criminal Case*

Fleming is a physician and cardiologist. He also has performed clinical studies as a side business. The underlying criminal case related to both endeavors, that is, the indictment referred to his actions as a practicing cardiologist, and, separately, his actions as a researcher.

Counts 1–10 of the relevant indictment charged Fleming with health care fraud, and counts 11–13 charged wire or mail fraud. The health care fraud related to submitting claims for payment to Medicare or other federal programs using a particular billing code when, in fact, Fleming had not performed the services described in the code. The billing code at issue related to a particular cardiology procedure requiring two imaging studies of the heart. Fleming billed under this code knowing that he had not performed the two imaging studies required by the code. The wire and mail fraud counts alleged that Fleming acted with intent to defraud when he submitted a false report and data suggesting that he had performed a clinical research study regarding soy chips and weight loss when he had not done so. Fleming had been engaged to perform the soy chip study by a private entity.

Because Fleming's ability to pay for a lawyer was allegedly impaired, Hansen, an Assistant Federal Public Defender, was appointed to represent him. Hansen engaged experts and prepared for trial. With Hansen providing a vigorous defense, this complex case proceeded to a jury trial. The trial was conducted between April 6, 2009, and April 22, 2009. On April 23, 2009, the jury sent a series of questions to the Court including these two: "Can we agree on some counts 11–13 but not on counts 1–10" and "if deadlock[ed] how long do we need to deliberate?" (Filing No. 128.) Shortly thereafter, one of the jurors became ill and was taken to the hospital. (Filing No. 133 (digital audio recording).)

Later on April 23, 2009, and with the jury excused for the day, Hansen extracted a sweet deal from the government. Fleming wisely took it. (Filing No. 138.) Essentially, the plea agreement called for Fleming to plead guilty to one count of health care fraud (count 4) and one count

of mail fraud (count 13). Among other things, he also agreed to pay restitution and to be permanently excluded from participating in Medicare and other federal health care programs. In return, the government agreed to recommend a sentence that spared Fleming from prison. Except for claims of ineffective assistance counsel or a later determination by the Supreme Court that the charges did not constitute a crime, Fleming waived his right to appeal. With the exception of ineffective assistance of counsel or prosecutorial misconduct, Fleming also agreed not to seek post-conviction relief under 28 U.S.C. § 2255.

Before I accepted his guilty plea, Fleming completed and signed a 14–page petition to enter a plea of guilty. (Filing No. 135.) Among other things, Fleming wrote in that petition that he was guilty of the charges because "I billed for [code] 78465 when I did not do a rest & stress tomographic study. I submitted this claim on May 30, 2002 knowing I did not do two tomographic studies. On March 8, 2004 I used Federal Express to deliver documents that falsely reported 60 people in the soy chip study." (*Id.* at CM/ECF p. 14.) Fleming was extensively examined by me regarding the plea and the plea agreement in the afternoon of April 23, 2009, the evening of April 23, 2009, and the afternoon of April 24, 2009. (Filing No. 133 beginning at digital audio counter number 27.29, Filing No. 134, and Filing No. 137.) Suffice it to say that Fleming's guilty plea was knowing, intelligent and voluntary, there was a factual basis for the guilty plea,[1] Fleming fully understood the plea agreement and its consequences, and Fleming wanted me accept his guilty plea and the plea agreement. Still further, I closely questioned him to insure that he understood the collateral consequences of the plea agreement and particularly the bar against participating in federal health care programs.

I sentenced Fleming on August 20, 2009, and the judgment was entered on August 21, 2009. (Filings Nos. 171, 172, and 176.) I sentenced Fleming to probation for a term of 5 years with special conditions including six months of home confinement with electronic monitoring. I also ordered him to pay restitution in the amount of $107,244.24, and I ordered him to comply with the "Exclusion Agreement" he had entered into with United States Department of Health and Human Services. (Filing Nos. 171 and 176.) This was a huge break for Fleming because his custodial range under the sentencing Guidelines was 46 to 57 months in prison, and the probation officer was recommending a 50–month sentence. (Filings Nos. 177 and 178 (Sealed).)

As I always do, both orally and in writing, I provided Fleming with a detailed explanation of how Fleming could appeal notwithstanding his appeal waiver. I also explained that, if he appealed, the Court of Appeals would appoint counsel to represent him on appeal if he could not afford to pay for a lawyer. (Filings Nos. 172 and 174.) I specifically informed Fleming that he could file the notice of appeal on his own, he could direct Hansen to file the notice of appeal or my courtroom deputy would file a notice of appeal for him if so requested. Fleming acknowledged in writing that he understood. (Filing No. 174.) Fleming also told me orally that he had no questions about his right to appeal. (Filing No. 172.)

The government moved to dismiss all other charges and I granted that motion.

---

1. For example, I asked Fleming "is there any doubt in your mind that you are guilty of counts 4 and 13 of the indictment?" (Filing No. 134 beginning at digital audio counter number 44.00.) In a firm voice, Fleming responded, "no sir." (*Id.*)

I ended the sentencing hearing praising the "superb lawyers" who did a "superb job" with a very complex case and I thanked them for their service.

Fleming did not appeal. On September 9, 2009, and after the time for appeal had run, Hansen moved to withdraw. (Filing No. 181.) I granted the motion on that same day. (Filing No. 182.)

### Case No. 4:07CR3005—the § 2255 Motion [2]

Two days after I granted Hansen leave to withdraw, Fleming filed a § 2255 motion. (Filing No. 187.) In that motion, Fleming alleged that he received ineffective assistance of counsel, that he was coerced into entering his plea and related agreement, that he was innocent, and that the prosecutor failed to disclose evidence favorable to Fleming.

On October 9, 2009, 2009 WL 3271338, I denied the motion. (Filing No. 187.) In particular, and among other things, I found that Hansen had not provided ineffective assistance of counsel, that neither Hansen nor anyone else had coerced Fleming; that Fleming waived his "actual innocence" claim in the plea agreement and also by pleading guilty, that Fleming was not innocent, and that there was no prosecutorial misconduct. (*Id.*)

Fleming sought to appeal, but the Court of Appeals denied a certificate of appealability and dismissed the appeal. (Filing Nos. 197–199.) The mandate of the Court of Appeals was filed on February 19, 2010. (Filing No. 199.)

### Case No. 4:10CV3217—the "Habeas" Action

On June 16, 2010, Fleming, who was then residing in Nevada, filed a motion seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Filing No. 1.) Subsequently, Fleming filed an amended motion. (Filing No. 4.) Condensed and summarized, Fleming's main claim alleged that his guilty plea was coerced because Hansen failed to offer a defense to the mail and wire fraud allegations. (Filing No. 4 at CM/ECF p. 3.) On November 9, 2010, Judge Edward C. Reed, Jr., of the District of Nevada transferred this matter to the District of Nebraska. (Filing No. 8.)

### The Nebraska Bar Complaint

Fleming filed a complaint with the Nebraska Counsel on Discipline on November 6, 2010, which was received by the Counsel on Discipline on November 9, 2010, the same day this case was transferred from Nevada to Nebraska. Attached to that complaint was a copy of the Memorandum and Order that I had entered denying the § 2255 motion. On November 10, 2010, the Nebraska Counsel on Discipline wrote to Hansen, stating: "I would appreciate a written response from you addressing the issues raised." [3] On November 15, 2010, I received a communication from David Stickman ("Stickman"), the Federal Public Defender for the District of Nebraska questioning the propriety of the preliminary investigation by Nebraska's Counsel on Discipline.

Stickman was following proper protocol. Our court had previously advised federal lawyers to contact the judge to whom a federal case was assigned if Nebraska's Counsel on Discipline commenced an investigation and requested a response to an ethics complaint regarding a lawyer's conduct in a federal case, particularly when

---

2. Because § 2255 motions are civil in nature, a civil case was opened for statistical purposes. (See 4:09CV3193). Nonetheless, and in accord with our practice, all pleadings regarding the § 2255 motion were filed in the criminal case.

3. The letter and Fleming's complaint will be filed in this matter and then sealed.

the Counsel on Discipline failed to first refer the ethics grievance to the appropriate federal judge for resolution. Our Chief Judge had previously conferred with Chief Justice Heavican of the Nebraska Supreme Court regarding the propriety of Nebraska's Counsel on Discipline opening ethics investigations in federal cases. It had been our understanding that bar complaints lodged with the Counsel on Discipline regarding the conduct of a lawyer in a federal case would be referred to this Court in the first instance. *See October 22, 2010 Judicial Council Minutes–US District Court Nebraska 2010*, http://www. ned.circ8.dcn/resources/ (follow "Resources," then "Minutes," then "Nebraska Judicial Council," then "October 22, 2010").

Upon receipt of Stickman's inquiry, I advised Chief Judge Bataillon. Chief Judge Bataillon contacted Nebraska's Counsel on Discipline on November 15, 2010, and requested that he defer the inquiry. On that same day, the Nebraska Counsel on Discipline agreed to defer his inquiry until the federal matter had been resolved. The Counsel on Discipline did not, however, explain why he had not made a referral to this court in the first instance as seemingly required by Chief Judge Bataillon's agreement with Chief Justice Heavican.

Fleming's complaint against Hansen was more like a § 2255 motion than an ethics pleading. That is, it equated claims of ineffective assistance of counsel with ethics violations. Summarized and condensed, Fleming alleged that Hansen had engaged in unethical conduct because Hansen failed to present a defense regarding the wire and mail fraud counts, because Hansen told Fleming he was "delusional" if Fleming thought he was innocent, because Hansen told Fleming that an appeal would be denied as frivolous, because Hansen re-fused to subpoena Fleming's accountant who would have testified that Fleming's receptionist (apparently a "whistle blower") had not worked for Fleming long enough to have relevant information, because counsel refused to subpoena a representative of the American Medical Association to testify about billing codes, because counsel failed to object to the prosecution's experts' characterizations of the race of certain medical journal authors, and because counsel failed to pursue a line of defense brought up by the presentence report.

## ANALYSIS

I first address the Nebraska bar complaint. After that, I address Fleming's "habeas corpus" action.

### Nebraska Bar Complaint

First, this court has asserted jurisdiction over ethics complaints lodged by a defendant in a federal criminal case. *See, e.g., United States v. Zierke*, 738 F.Supp.2d 977, 986 & n. 4, 2010 WL 3702369 at *8 & n. 4 (D.Neb. Sept. 15, 2010) (citing NEGenR 1.8(d).)[4] This court has adopted its own ethical standards, and we have specifically declined to adopt other codes of professional responsibility such as those promulgated by the State of Nebraska. *Id.* (citing NEGenR 1.7(b)(2)). Furthermore, this court alone determines whether a member of the bar of this court should be appointed to investigate or prosecute a complaint of ethical violations occurring in this court, and no lawyer (including the Counsel on Discipline) is authorized to investigate or prosecute complaints of ethical violations in this court without an order of appointment issued pursuant to our rules. *Id.* (citing NEGenR 1.8(d)(4)(B) & NEGenR 1.8(d)(8)). Finally, a judge of this

4. The same thing is true in civil cases.

court has the authority to resolve ethics complaints about lawyers in cases assigned to that judge with or without appointing a member of the bar to investigate the complaint. NEGenR 1.8(d)(4)(A).

*Second, I respectfully urge Nebraska's Counsel on Discipline to refer state bar complaints regarding the conduct of a lawyer in a federal case to the federal judge to whom that case is or was assigned so that the federal interest may be vindicated first. I request that this referral be made prior to requesting the lawyer provide Nebraska's Counsel on Discipline with a response to the complaint. I request that this referral practice be followed for pending and closed federal civil and criminal cases.*

The foregoing practice will avoid inconsistent results, will allow the judge with the most knowledge to address the ethics issue, and it should save everyone time and money. Since Nebraska's interest in an alleged ethics violation occurring in a federal case is normally weaker than the federal interest, it only makes sense to make such a referral. If, for some reason, Nebraska's Counsel on Discipline does not believe Nebraska's interests have been vindicated by a federal ruling, then the Counsel on Discipline would (I suppose) be free to take further action as he may think necessary.[5]

Finally, the ethics complaint against Hansen is entirely lacking in merit. In fact, it is absurd. Having observed and participated in the pretrial proceedings

and the trial, I add the following only to punctuate the point.

Fleming's primary complaint against Hansen is addressed fully in the following section of this Memorandum and Order regarding Fleming's "habeas" motion. In general, however, it is sufficient to state that Hansen did a fantastic job for his client and there is no plausible grounds for the assertion of an ethics violation under our standards or Nebraska's standards.

Hansen engaged and presented experts on both the health care fraud claims and the mail and wire fraud claims, and he expended $39,837.92 of the government's money to pay those individuals. (Filing No. 137 at CM/ECF p. 1 (Sealed).[6]) Furthermore, Hansen spent 663.9 hours defending the case, his very excellent paralegal spent 143.5 hours assisting Hansen and his equally excellent criminal investigator spent an additional 347 hours looking into the facts for Hansen. (*Id.*) In short, an enormous amount time, effort and money was spent defending Fleming.

The result Hansen obtained—probation and no prison time despite a Guidelines range that called for at least 46 months in a federal lockup—was the best Fleming could have wished for under the circumstances. That is particularly true given Fleming's admitted guilt on two counts, the strong evidence against Fleming on all counts and the fact that Hansen faced two extremely well-qualified Assistant United States Attorneys. When he entered his guilty plea, Fleming himself wrote that he

---

5. In making this statement, I do not foreclose the possibility of a successful challenge in an appropriate case to the jurisdiction or authority of Nebraska's Counsel for Discipline. Hopefully, we can avoid such an unseemly dispute by the referral practice mentioned in this opinion.

6. I am aware of this information because the government challenged the appointment of

the Federal Public Defender, and I ordered Hansen to provide this information to me. The government believed that Fleming should pay for his own lawyer or reimburse the government for Hansen's services. I deferred that decision until sentencing. Ultimately, I reaffirmed the appointment of the Federal Public Defender and decided not to tax Fleming with the costs of his defense.

was satisfied with Hansen's representation, that Fleming had no complaints regarding what Hansen had done and that Fleming had no complaints about what Hansen had not done. (See, e.g., Filing No. 135 at CM/ECF p. 2.)

Regarding Hansen's alleged mistreatment of Fleming, those complaints are bogus. Although Fleming was a difficult and trying client to represent, Hansen was respectful, but firm, when dealing with Fleming. In fact, Fleming never made a contemporaneous objection to me about Hansen's treatment of him.

In summary, Fleming got the best defense that "money could buy." He was represented by one of the top federal criminal defense lawyers that I have had the privilege of observing over the last 23 years. The result that Hansen obtained for Fleming was outstanding. Fleming's bar complaint should be dismissed without any further requirement that Hansen respond to it.

### The "Habeas" Action

For both procedural and substantive reasons, Fleming's motion for relief under 28 U.S.C. § 2241 will be denied. A brief explanation follows.

### Procedural Reasons for Dismissal

Initially, Fleming's habeas action must be dismissed for several procedural reasons. To save time, I detail only two of the procedural reasons that require dismissal.

■ In circumstances like this, a habeas action under § 2241 cannot be used as a substitute for a § 2255 motion. *See, e.g.,* 28 U.S.C. § 2255(e) ("An application for a writ of habeas corpus in behalf of a prisoner who is authorized to apply for relief by motion pursuant to this section, shall not be entertained if it appears that the applicant has failed to apply for relief, by motion, to the court which sentenced him, or that such court has denied him relief, unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention."). In order to avoid dismissal, Fleming "has the burden of showing that the remedy under § 2255 would be inadequate or ineffective." *Abdullah v. Hedrick,* 392 F.3d 957, 959 (8th Cir.2004). "Furthermore, § 2255 is not inadequate or ineffective merely because the claim was previously raised in a § 2255 motion and denied...." *Id.* Fleming has not satisfied his burden of proving that his remedy under § 2255 was inadequate.

■ Similarly, Fleming's motion is effectively a second § 2255 motion dressed up as a § 2241 motion, and because he has not obtained the permission of the Court of Appeals to file a successive § 2255 motion, the motion must be denied. *See, e.g.,* 28 U.S.C. § 2255(h) ("A second or successive motion must be certified as provided in section 2244 by a panel of the appropriate court of appeals...."); *United States v. Lambros,* 404 F.3d 1034, 1036 (8th Cir. 2005) ("It is well-established that [defendants] may not bypass the authorization requirement ... for filing a second or successive ... action by purporting to invoke some other procedure.").

### Substantive Reasons for Dismissal

■ Turning to Fleming's primary complaint against Hansen, Fleming alleges that Hansen left him defenseless to the wire and mail fraud allegations because Hansen dropped the testimony of a defense expert after I allegedly chastised Hansen at the bench. (*See, e.g.,* Filing No. 1 at CM/ECF p. 2–3 (Grounds One and Two) and Filing No. 4 at CM/ECF p. 2.) Like all of Fleming's complaints, the files and records of this court conclusively es-

tablish that Fleming's complaints have no merit.

In order to prevail on a claim that defense counsel rendered ineffective assistance of counsel, the claimant must establish two things. First, that " 'counsel's representation fell below an objective standard of reasonableness,' " [7] and second, that " 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " [8] *Nguyen v. United States,* 114 F.3d 699, 703–04 (8th Cir.1997) (quoting *Strickland v. Washington,* 466 U.S. 668, 688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)).

An evidentiary hearing is unnecessary if the claimant makes an insufficient preliminary showing on either or both prongs *or* the record clearly contradicts the claimant's showing on either or both prongs. *Engelen v. United States,* 68 F.3d 238, 240 (8th Cir.1995) (affirming denial of § 2255 motion without a hearing in the face of an ineffective assistance of counsel claim; stating that no evidentiary hearing is required where "(1) the petitioner's allegations, accepted as true, would not entitle the petitioner to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact").

In defense of the mail and wire fraud allegations, Hansen called Dr. Alicia Carriquiry, a professor and Director of Graduate Education in statistics at Iowa State University, to testify that Fleming's soy chip study was unlikely to have been fabricated from scratch. (Filing Nos. 117 and 118.) On cross-examination, the government proposed to examine Carriquiry regarding a "fake" data set that had been prepared by Hansen and reviewed by Dr. Kaiser, a colleague of Carriquiry's, who was assisting her.[9] (Without Hansen's permission, Fleming, or one of Fleming's friends, provided Kaiser with Hansen's "fake" data set and Kaiser proceeded to analyze the "fake" data set.) The government apparently wanted to show that the statisticians (Carriquiry and Kaiser) could not tell the difference between the "fake" data set and data found in Fleming's report.

Hansen objected to the government's proposal, and asserted that, if the government proceeded to use his work product and Kaiser's analysis of it, Hansen would need to testify about the reasons for preparation of the "fake" data set. At a bench conference, and later in a hearing outside the presence of the jury but in the presence of Fleming, I ruled that the government could use the "fake" data and Kaiser's analysis during cross-examination and I also ruled that Hansen would not be allowed to testify. But, I directed the government to agree to a stipulation that would avoid identifying the author of the "fake" data set while fully explaining how the "fake" data had been prepared. The stipulation was prepared, presented to the

---

**7.** A judge's "scrutiny of counsel's performance must be highly deferential" and the judge must "indulge a strong presumption that counsel's conduct falls within the range of reasonable professional assistance." *Reed v. United States,* 106 F.3d 231, 236 (8th Cir. 1997).

**8.** A "reasonable probability" is less than "more likely than not," *Kyles v. Whitley,* 514 U.S. 419, 434, 115 S.Ct. 1555, 131 L.Ed.2d

490 (1995), but it is more than a possibility. *White v. Roper,* 416 F.3d 728, 732 (8th Cir. 2005). It must be compelling enough to "undermine confidence in the outcome." *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052.

**9.** While it is unclear how the government came into possession of this information, it is likely that the government obtained it while interviewing defense experts prior to trial.

jury and the government cross-examined Carriquiry. Carriquiry deftly handled the government's cross-examination. She persuasively explained that she and Kaiser had not been fooled and no conclusions could be drawn from the "fake" data about whether the data in the Fleming study was fabricated. On redirect examination, Carriquiry reiterated her belief that the Fleming study "appeared to be real."

In support of this attack on Hansen, Fleming makes various factual allegations that are entirely disproved by the record. For example, he asserts that I "reprimanded" Hansen, but the record establishes that such an assertion is false.[10] Fleming asserts that he was unaware of what was happening because this matter was discussed at a bench conference,[11] but this is also not true. This matter was fully discussed and resolved in a hearing at which Fleming was present and able to hear and understand exactly what was transpiring. Most importantly, Fleming asserts that Hansen "closed the case, sending it to [the] jury with no defense on the fabrication charges" but that is a lie. On the contrary, Hansen handled the government's surprise cross-examination tactic effectively, and Dr. Carriquiry blunted the government's questioning by patiently explaining the error of the government's assumptions.

■ In short, the record establishes that Hansen was very effective and certainly not ineffective. Besides, Fleming suffered absolutely no harm (prejudice). There is not the slightest reason to think that Fleming would have rejected the highly favorable plea agreement that Han-

sen extracted from the government had counsel done something differently with Dr. Carriquiry or otherwise. *See, e.g., United States v. Davis,* 508 F.3d 461, 463 (8th Cir.2007) (holding that, in order to show "prejudice," the moving party must establish that "there is a reasonable probability that but for counsel's errors, the defendant would not have pleaded guilty but would have proceed to trial").

■ Fleming raises other arguments that are equally lacking in merit and require only a brief mention. Specifically, he complains about the portion of the indictment alleging fraudulent billing charges. He asserts that his submission of bills to the federal program did not constitute a crime because the billing code he used was proper. Aside from the fact that Fleming is barred from raising this issue by his plea agreement, suffice it to state that Fleming confessed his guilt when he entered a plea of guilty to one of the "coding" counts and he is bound by his own admission. Furthermore, there was more than sufficient evidence in the form of expert testimony to prove that Fleming knowingly used a billing code that required two specific types of imaging studies, yet Fleming submitted bills knowing that he had not conducted both of the required tests.

### CONCLUSION

There is a saying that "no good deed goes unpunished" and it is surely applicable here. Fleming has libeled Hansen despite Hansen's zealous and effective efforts on Fleming's behalf. Fleming should be

10. Indeed, it was Fleming or his friend that handed out Hansen's work product without his permission. So, if I were to have assessed blame, Hansen would not have been found culpable.

11. Incidentally, all matters, including bench conferences, are captured by the digital audio recording system that I use. That recording, like all others, was easily and publicly accessible to Fleming on the date of recording by going to the Internet and logging into CM/ECF.

ashamed of himself. Furthermore, Nebraska's Counsel on Discipline should put a quick end to Fleming's state ethics complaint just as I have done so on the federal level. Any other action would be a travesty.

IT IS THEREFORE ORDERED that:

1.  The motions seeking relief under 28 U.S.C. § 2241 (filings nos. 1 and 4) are denied and dismissed with prejudice. A separate judgment will be issued in accordance with this Memorandum and Order.

2.  Fleming's Motion for Judgment Granting Writ of Habeas Corpus (filing no. 15) is denied.

3.  The Clerk of the court shall file and seal Fleming's ethics complaint submitted to Nebraska's Counsel on Discipline. Treating Fleming's complaint as having been lodged in this court, that complaint is denied with prejudice pursuant to NEGenR 1.8(d)(4).

4.  The Clerk of the court shall provide copies of this Memorandum and Order to Fleming, Hansen and Stickman.

5.  I will provide copies of this Memorandum and Order to the Nebraska Counsel on Discipline. I will respectfully suggest that Fleming's ethics complaint be denied with prejudice and that no response be required of Hansen. I will also request that Nebraska's Counsel on Discipline follow the referral procedure outlined in this Memorandum and Order for all federal cases whether they be civil or criminal in nature and whether they be closed or open cases.

6.  My chambers shall publish this Memorandum and Order.

## JUDGMENT

IT IS ORDERED that judgment is entered for the United States of America and against Richard M. Fleming providing that he shall take nothing and this case is dismissed with prejudice.